113 So.2d 5 (1959)
Annie E. MARSH
v.
Harry M. SNYDER.
No. 21192.
Court of Appeal of Louisiana, Orleans.
May 11, 1959.
*6 Rittenberg, Weinstein & Bronfin, Sylvan J. Steinberg, New Orleans, for plaintiff and appellee.
Numa V. Bertel, Jr., New Orleans, for defendant and appellant.
REGAN, Judge.
Plaintiff, Annie E. Marsh, instituted this suit against the defendant, Harry M. Snyder, endeavoring to recover the sum of $995, representing damages for injuries which resulted from being bitten by the defendant's dog.
Defendant pleaded the exceptions of vagueness, no cause or right of action, and prescription, which were properly referred to the merits. He then answered, denying liability for any damages, asserting in defense of the suit that the dog was not known to have a vicious nature; in the alternative, the defendant pleaded the contributory negligence of the plaintiff.
From a judgment in favor of the plaintiff in the amount of $350 the defendant has prosecuted this appeal.
On June 4, 1956, at about 9:30 a. m. the defendant was walking both of his dogs, a Dalmatian and an English setter, in the general vicinity of his home. The dogs were not restrained by leashes but were permitted to run, subject to the command of their master. The plaintiff, a domestic servant, was either in front or on the side of the home of her employer engaged in collecting the garbage cans and sweeping up some garbage that had been inadvertently spilled by the Department of Sanitation. While plaintiff was so occupied, the defendant accompanied by his dogs walked by the premises, and suddenly the Dalmatian bit or "nipped" the forearm of the plaintiff. The incident transpired within a split second and the defendant failed to observe what caused it to occur. In fact, both plaintiff and defendant were taken completely by surprise.
The plaintiff contends that the defendant either knew or should have known of the vicious propensities of this dog, and therefore he is liable for the injuries inflicted upon her.
Defendant on the other hand insists that the dog never manifested any vicious characteristics prior to this incident that he was, or should have been aware of, and that therefore the lower court erred in imposing liability upon him for the injuries incurred by the plaintiff when the court literally applied Article 2321 to the facts of this case.
The only question posed for our consideration is whether the defendant knew or should have known that the animal possessed vicious propensities prior to biting plaintiff.
At common law, the theory that the owner of a domestic animal did not have any property rights therein was perhaps the basis for escaping liability for damages caused by the animal.[1] Later the common law adopted the doctrine of scienter. Under this theory the defendant was liable in tort, if previous to the plaintiff's injury, he harbored an animal knowing it to *7 be vicious.[2] The jurisprudence emanating from a majority of American states has adopted the doctrine of scienter.[3]
The common law doctrine of scienter has been used by the civil courts in Louisiana only to the extent of establishing the fault or negligence of the owner of the animal.[4] The jurisprudence relative to the liability of the owner or harborer of a vicious dog which injures someone is predicated on Article 2321[5] of the Civil Code of 1870, LSA. In connection with the rationale thereof, the judges have applied Article 2315[6] providing for liability for fault and Article 2316[7] providing liability for negligence. A casual reading of the first line of Article 2321 reveals that it is couched in the most absolute terminology, to wit: "The owner of an animal is answerable for the damage he has caused." This edict would, of itself, lead one to believe that liability of the owner of the animal could be incurred without fault. However in construing Article 2321 together with Articles 2315 and 2316, the appellate courts of this state have read the requirement of fault or negligence into Article 2321.
This result, perhaps, was reached by reasoning that animals occupy two categories insofar as liability attaches to the owner or harborer of an animal which injures someone, that is, animals ferae naturae and animals mansuetae naturae. The first category embraces wild, undomesticated animals, such as bears, lions, tigers, wolves, buffaloes, and deer. These animals are considered to be inherently dangerous, and therefore anyone who owns or harbors such an animal does so at his peril.
Animals mansuetae naturae are animals which have been domesticated by man for centuries, such as horses, sheep, goats, cows, and dogs; and they have come to be regarded as inherently safe. However, if they should become vicious or have by their previous history manifested a vicious temperament then the owner or harborer thereof retains the animal at his peril.
The burden of proving freedom from fault is placed upon the owner or harborer of the animal in a majority of the cases decided by the appellate courts of this state.[8]
The evidence adduced herein on behalf of the defendant clearly reveals that he was very fond of dogs, having raised them most of his life and trained them to obey commands. The record likewise reflects that the defendant assumed the burden of establishing as a fact that he possessed no actual or constructive knowledge that this animal possessed any vicious propensities which might cause injury to anyone.
The defendant testified that the dog was of mild and docile disposition and had never manifested a temperament which would cause him to know or to reasonably assume that the animal would bite anyone. Three of his neighbors appeared on his behalf and in substance reiterated generally *8 and specifically the previous good characteristics of the animal.
In rebuttal of the foregoing testimony the record discloses that the plaintiff, in our opinion, made one serious effort to establish as a fact that the defendant knew or should have known of the previous manifestations of the animal's vicious propensities. On cross-examination, plaintiff's counsel asked him if "a complaint was made to you by Mr. Byrnes that your dog had bitten his child." The defendant unhesitatingly answered "yes," and in explanation thereof asserted that the father accompanied by the child visited his home and showed him a small scratch on her abdomen and then they related to him that she had been skating and had run into the dogs, that neither he nor Mr. Byrnes was sure whether the dog had bitten or scratched the child, and out of an abundance of caution a tetanus shot had been given to the child, and Byrnes requested the defendant to keep the dog under close observation for a period of about 10 days, which was done.
The plaintiff in order to impeach the testimony of the defendant and to substantiate the accusation that this child had been bitten by the defendant's dog, called as her witness Mrs. Byrnes, who without equivocation substantiated the defendant's explanation of the incident.
The whole tenor of the record reveals that neither Mr. nor Mrs. Byrnes nor the defendant attached any significance to this incident; that is, they did not regard it as reflecting a vicious characteristic of the dog.[9] Certainly insofar as establishing viciousness of the animal with that degree of certainty required by the jurisprudence the proof falls short thereof, since if the child ran into the dog while she was on skates and incurred injuries as a result thereof, this fact fails to evidence a vicious temperament possessed by the dog so as to charge the owner with knowledge thereof.[10]
Of course, we are fully cognizant of the fact that it is not necessary in every case in establishing liability of the owner to prove that the dog had previously bitten or attacked someone else,[11] although the appellate courts may have facetiously remarked at some time that every dog is entitled to "one bite." It is sufficient under various circumstances that the animal had manifested such propensities as would cause the owner to know actually, or constructively, that the dog was of such a temperament that it would probably cause injury to someone. Nor is fault to be presumed from the mere fact that the dog was not restrained by a leash or confined at the time of the injury when the animal had previously been of a kind temper and disposition and had manifested no indication of viciousness.
Plaintiff also offered the testimony of William C. Maher, Jr., her employer, to show the vicious disposition of the animal by asserting that "one of these dogs nipped" at him, which was emphatically denied by the defendant, and no further evidence was offered by the plaintiff to substantiate this nebulous accusation.
Mrs. Maher also testified that defendant's wife had informed her that the dog had bitten her niece and therefore defendant and his wife desired to dispose of the animal; both defendant and his wife also denied that this had ever occurred; however, they admitted that they would like to place the animal in a country environment, *9 only for his own well-being because a "Dalmatian * * * likes to run with horses."
It may serve a useful purpose as an explanation of this litigation to mention that the record is embellished with innuendo emanating from Maher revealing the existence of a deeply rooted animosity between the Mahers and the defendant.
We are of the opinion, after having made a complete analysis of the record, that the defendant has successfully carried the burden of establishing his freedom from fault; that is, he has proven with that certainty that the law requires that he had no actual or constructive knowledge that the animal possessed characteristics which would cause injury to anyone.
For the reasons assigned, the judgment appealed from is reversed, and it is now ordered that there be judgment herein in favor of the defendant dismissing plaintiff's suit. All costs are to be borne by the plaintiff.
Reversed.
NOTES
[1] 7 Holdsworth, A History of the English Law 489 (1926).
[2] Read v. Edwards, 17 C.B.N.S. 245, 142 Rev.R. 324 (1864).
[3] Prosser, Law of Torts § 57 (1941).
[4] DeLisle v. Bourriague, 1901, 105 La. 77, 29 So. 731, 54 L.R.A. 420; see Note, 7 Tulane Law Review 447, 448 (1933).
[5] "The owner of an animal is answerable for the damage he has caused; * * *"
[6] "Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it; * * *."
[7] "Every person is responsible for the damage he occasions not merely by his act, but by his negligence, his imprudence, or his want of skill."
[8] Peyronnin v. Riley, 1931, 15 La.App. 393, 132 So. 235; Woulfe v. D'Antoni, La.App.1935, 158 So. 394; Fine v. Hiller, La.App.1933, 146 So. 50; contra, Martinez v. Bernhard, 1901, 106 La. 368, 30 So. 901, 55 L.R.A. 671, 87 Am.St.Rep. 306.
[9] Although important from an evidentiary standpoint, the fact that the dog had bitten or scratched someone previously is not of itself sufficient proof of vicious propensities to hold the owner or harborer of the animal liable for subsequent bites.
[10] Peyronnin v. Riley, 1931, 15 La.App. 393, 132 So. 235.
[11] Ladrix (Latour) v. D'Maggio, 1911, 8 Orleans App. 167.