REID, Judge.
This tort action was brought by Mrs. Sylvia Espinosa and her husband, Mr. J. A. Espinosa, against Mr. A. C. Hill and his liability insurer, Allstate Insurance Company for damages resulting from an assault on Mrs. Espinosa by Mr. Hill’s dog. Mr. Espinosa sued both individually and for the use and benefit of his minor child, Anna Sylvia Espinosa.
After a trial was had on the merits, judgment was rendered in District Court for $1250.00 for plaintiff’s personal injuries, fear, pain, and mental anguish resulting from the dog’s attack. Judgment was rendered for $50.00 for expenses occasioned Mr. Espinosa, individually, and for $250.00 for the use and benefit of the anxiety and mental anguish of the Espinosa child. The defendants have perfected a suspensive appeal from this adverse judgment.
The trial judge concluded that substantially the following set of facts were presented herein. Mrs. Espinosa first saw the boxer *13 dog belonging to the Hills just after she met Mrs. Hill. She was standing in the open speaking with Mrs. Hill and her child, Anna Sylvia Espinosa, was in a stroller. The boxer who was named “Friskey” approached at this time bearing his teeth, whether in play or in threat remains unanswered. Mrs. Espinosa became alarmed and grabbed her child from the stroller, although Mrs. Hill protested her actions. The dog then jumped onto Mrs. Espinosa and tore a hole in a cardigan she had thrown over her shoulders. Mrs. Espinosa was frightened, but Mrs. Hill controlled the dog. During this incident Mrs. Hill stated that she thought Friskey was chained.
Mr. Allen Dubois, who lived in the same neighborhood, stated that Friskey had knocked his small daughter down on two occasions. On one of these occasions, Mrs. Hill was standing across the street. Although it is not exactly clear from the testimony whether or not Mrs. Hill actually saw the incident the comment which she made indicated that she was aware of what had occurred. She said that she thought the dog was only playing with the child.
These incidents both occurred prior to the time of Friskey’s attack on Mrs. Espinosa and her child. It was proven that Mr. Hill offered to pay for the sweater torn by Friskey. Testimony was also given regarding a time when Friskey tried to bite a telephone company worker but there was no proof that the Hills had knowledge of this incident.
On May 11, 1960, Mrs. Sylvia Espinosa was walking over to visit a neighbor, Mrs. Julian Tablada. She had her child, Anna Sylvia Espinosa, in her arms. Friskey was apparently out of sight and bounded out in a menacing fashion. Mrs. Espinosa was terrified and called in a soft voice to attempt to get Mrs. Tablada’s five year old boy who was also in the yard to call his mother. He would not and said that the dog would not hurt her. She walked on and the dog circled her, growling. Just before she reached the safety of the house the dog closed in and knocked her forward. The child hit the ground first and Mrs. Espinosa apparently got on all fours over her in an effort to protect her. Friskey bit Mrs. Espinosa on the back of her left hip and on her thigh and caused several bruises elsewhere, either with his paws or his teeth. Repairmen in the Tablada home heard the commotion and rushed to Mrs. Espinosa’s aid. One of them kicked Friskey and he ran off.
The slacks then worn by Mrs. Espinosa which were introduced in evidence have a large rip in them as a result of the attack. The girdle worn by Mrs. Espinosa was also ruined.
Mrs. Espinosa went to a doctor for treatment of her cuts and she was also given tetanus shots. The dog was kept under observation at a veterinarian’s clinic for'the required period in case it developed rabies. It did not, and the Hills then gave the dog to some one else who lived out of their neighborhood. The Espinosa child was apparently quite terrified by the attack. She was about one year old at the time. She now fears all dogs and has nightmares about the incident.
On appeal, counsel for defendants contends that the trial judge’s findings are in error. The main respect in which the findings are attacked is in regard to the ruling that the Hills knew or should have known of the vicious propensities of their dog as a result of the prior actions of the dog.
No point would be served by a laborious review of the sometimes conflicting testimony regarding the actions of Friskey prior to his attack on Mrs. Espinosa. Suffice it to say that the record has been reviewed carefully and it is the considered opinion of the court that the résumé of the facts set forth above is a fair one. In light of these facts it is not felt that the findings of the trial court can be found manifestly erroneous. It is felt that possibly both Mr. and Mrs. Hill were in complete good faith in minimizing the earlier incidents which *14 carne to their attention. However, it is also evident that other people were worried about the dog’s vicious propensities and it appears that they were rightly so. It is felt that Mr. and Mrs. Hill should have known, if they did not, that just such an occurrence as is sued upon herein was possible from the actions of Friskey which were known to them. This is particularly true since it is known that Boxers are of a nervous temperament and easily excitable.
The- recent case of Marsh v. Snyder, La.App., 113 So.2d 5, gives a complete and accurate summary of the pertinent Louisiana rules concerning the liability of the owner of an animal for the animal’s torts; This summary is as follows:
“At common law, the theory that the owner of a domestic animal did not have any property rights therein was perhaps the basis for escaping liability for damages caused by the animal. Later the common law adopted the doctrine of scienter. Under this theory the defendant was liable in tort, if previous to the plaintiff’s injury, he harbored an animal knowing it to be vicious. The jurisprudence emanating from a majority of American states has adopted the doctrine of scienter.
“The common law doctrine of scien-ter has been used by the civil courts in Louisiana only to the extent of establishing the fault or negligence of the owner of the animal. 'The jurisprudence relative to the liability of the owner or harborer of a vicious dog which injures someone is predicated on Article 2321 of the Civil Code of 1870, LSA. In connection with the rationale thereof, the judges have applied Article 2315 providing for liability for fault and Article 2316 providing for liability for negligence. A casual reading of the first line of Article 2321 reveals that it is couched in the most absolute ter-minolpgy, to-wit: ‘The owner of an animal is answerable for the damages he has caused.’ This edict would, of itself, lead one to believe that liability of the owner of the animal could be incurred without fault. However in construing Article 2321 together with Articles 2315 and 2316, the appellate courts of this state have read the requirement of fault or negligence into Article 2321.
^ * Jjí * 5j€
“Animal mansuetae naturae are animals which have been domesticated by man for centuries, such as horses, sheep, goats, cows, and dogs; and they have come to be regarded as inherently safe. However, if they should become vicious or have by their previous history manifested a vicious temperament then the owner or harborer thereof retains the animal at his peril.
“The burden of proving freedom from fault is placed upon the owner or harborer of the animal in a majority of the cases decided by the appellate courts of this state.” (Emphasis ours.)
 Applying the rule evolved in such instances to the case at bar, it is evident that the defendants have the burden of proving that the Hills were free from fault in allowing their dog to roam at large. We agree with the trial court that they have not sustained this burden.
No authorities on quantum have been cited by either counsel for plaintiff nor counsel for defendant. A review of quantum granted in similar cases shows that awards in such cases have ranged from $2500.00 down to $125.00, depending on the circumstances involved. Due to the slight nature of the actual wounds involved and the short duration of the attack, it is found that the judgment of the trial court in favor of Mrs. Espinosa is excessive. It will be reduced to $750.00. Let there be judgment herein in favor of Mrs. Sylvia Espinosa in the amount of $750.00.
The judgment of the trial court is affirmed as to the other awards. Judgment *15 is granted in the amount of $50.00 to Mr. J. A. Espinosa, individually, and in the amount of $250.00 to Mr. J. A. Espinosa for the use and benefit of his minor child, Anna Sylvia Espinosa. Costs of court are taxed to the defendants and legal interest is due on the amount of the judgment herein from judicial demand until paid.
Amended and affirmed.