146 So.2d 635 (1962)
Joseph B. KLING, Jr., Plaintiff-Appellee,
v.
U. S. FIRE INSURANCE COMPANY and T. Frank Smith, Defendants-Appellants.
No. 5564.
Court of Appeal of Louisiana, First Circuit.
May 21, 1962.
On Rehearing November 9, 1962.
*636 Taylor, Porter, Brooks, Fuller & Phillips, by Tom Phillips and Wm. A. Norfolk, Baton Rouge, for appellants.
Durrett, Hardin, Hunter, Dameron & Fritchie by Calvin E. Hardin, Jr., Baton Rouge, for appellee.
Before ELLIS and HERGET, JJ., and MILLER, J. pro tem.
MILLER, Judge pro tem.
This is an action for damages arising out of a fight between two dogs, one, a Boxer and the other, a Toy Terrier. The encounter resulted in the death of the Toy Terrier, whose owner, J. B. Kling, Jr., is suing the owner of the Boxer, T. Frank Smith and Smith's insurer, U. S. Fire Insurance Company, in tort for damages. The trial court gave judgment for the plaintiff in the amount of $555.00 and the defendants have appealed.
The facts surrounding the incident itself are not in dispute. Plaintiff and defendant lived in the same general neighborhood in the City of Baton Rouge. The plaintiff owned a 9 pound Toy Terrier dog named "Penny" and the defendant owned a 75 pound Boxer named "Mike". The only eye witness to a portion of the fracas was one Elnora Lewis, a domestic servant who worked for a neighbor of both the plaintiff and defendant.
On January 25, 1960, while Mrs. Lewis was hanging up clothes, she heard some dogs barking. Upon investigation she discovered the defendant's Boxer chasing the plaintiff's Toy Terrier. She first thought they were playing but when she saw the Boxer grab the Toy Terrier and commence shaking him, she ran next door for help. The fight was stopped and the Toy Terrier was taken to the Veterinarian in serious condition suffering from lacerations, a hemorrhage in the lung and a ruptured spleen. The Toy Terrier died during the night.
In his petition the plaintiff alleged that defendant knowingly harbored a vicious and dangerous dog. Defendant denied these allegations and in the alternative entered special pleas of assumption of risk and contributory negligence based upon plaintiff's allowing his small dog to run at large in a neighborhood of dogs.
Was the Boxer a vicious and dangerous animal, and if so, did his owner, the defendant, have knowledge of these dangerous propensities? In an effort to answer this double-barrelled question and thus establish negligence on the part of defendant, plaintiff offers four incidents occurring prior to the instant one which he contends support an affirmative answer to these questions.
Incident Number 1. Mrs. Robert C. Cox, a neighbor, testified that the defendant's Boxer chased and caught her tomcat. When Mrs. Cox came upon the scene, the Boxer was lying on the ground with the cat in its mouth. Mrs. Cox, with a hammer in one hand, broom in the other and "screaming like a banshee" routed the Boxer and recovered her cat. Regarding the cat's condition, Mrs. Cox had this to say, "He was not badly injured, strange to say, but he was sore and shook for several days, but he recovered." Mrs. Cox declined Mr. Smith's offer of veterinary assistance.
Incident Number 2. A small child in the neighborhood reported to Mr. Smith *637 that his Boxer had killed one of her kittens. Upon investigating the matter, the defendant learned that the kitten was killed at a time when his dog was in a Veterinarian's Kennel being kept while the defendant was on a vacation. Furthermore, the defendant showed his dog to the girl who stated that this was not the one that had killed her kitten.
Incident Number 3. The defendant received a report from a neighbor, Mrs. Blackmon, to the effect that her child had been bitten by his Boxer. Mr. Smith's investigation revealed that the child had been sitting on top of the dog's head trying to take something from the dog's mouth. Mr. Smith testified that he believed the mark made on the Blackmon child was made by a protrusion of the dog's collar. Suffice it to say that the bite, if it was a bite, was only a scratch. No member of the Blackmon family appeared in court to testify.
Incident Number 4. While investigating the Blackmon incident, defendant "heard" that his Boxer was accused of biting a child of Mr. Ted C. McCullough, Jr., also a neighbor. Mr. McCullough testified that he did not see the dog bite the child and upon defendant's investigation he was advised that if the dog did bite the child the dog must have been protecting himself as apparently the children in the neighborhood had been playing with the dog at the time. At any rate, the skin was not broken and apparently the matter was not considered serious by the McCullough's as they had never notified the defendant of the incident.
Against the background of these four incidents we must consider the present state of the law in Louisiana in this area of concern. Briefly stated, to charge the owner of a domesticated animal with negligence it must be shown that the owner had previous knowledge of the vicious propensities of the animal. The vast majority of these cases involve injuries sustained by persons as a result of the attacks or actions of animals. Most of the incidents involved dogs and persons, children in particular. The only case cited by either counsel involving animals, was the case of Daspit v. Gallet, La.App., 69 So.2d 532, involving an alleged fight between two bulls. However, the finding in this case does not offer much help since the court concluded that the evidence was not sufficient to establish that the broken leg was caused by the actions of the defendant's bull. We don't have the same situation here because the defendant concedes that his Boxer killed the Toy Terrier.
In the very recent case of Espinosa v. Hill, La.App., 138 So.2d 12, this court sitting in another panel, gave an accurate summary of the Louisiana law in quoting from the case of Marsh v. Snyder, La.App., 113 So.2d 5, as follows:
"`At common law, the theory that the owner of a domestic animal did not have any property rights therein was perhaps the basis for escaping liability for damages caused by the animal. Later the common law adopted the doctrine of scienter. Under this theory the defendant was liable in tort, if previous to the plaintiff's injury, he harbored an animal knowing it to be vicious. The jurisprudence emanating from a majority of American states has adopted the doctrine of scienter.

"`The common law doctrine of scienter has been used by the civil courts in Louisiana only to the extent of establishing the fault or negligence of the owner of the animal. The jurisprudence relative to the liability of the owner or harborer of a vicious dog which injures someone is predicated on Article 2321 of the Civil Code of 1870, LSA. In connection with the rationale thereof, the judges have applied Article 2315 providing for liability for fault and Article 2316 providing for liability *638 for negligence. A casual reading of the first line of Article 2321 reveals that it is couched in the most absolute terminology, to-wit: "The owner of an animal is answerable for the damages he has caused." This edict would, of itself, lead one to believe that liability of the owner of the animal could be incurred without fault. However in construing Article 2321 together with Articles 2315 and 2316, the appellate courts of this state have read the requirement of fault or negligence into Article 2321.
* * * * * *
"`Animal mansuetae naturae are animals which have been domesticated by man for centuries, such as horses, sheep, goats, cows, and dogs; and they have come to be regarded as inherently safe. However, if they should become vicious or have by their previous history manifested a vicious temperament then the owner or harborer thereof retains the animal at his peril.
"`The burden of proving freedom from fault is placed upon the owner or harborer of the animal in a majority of the cases decided by the appellate courts of this state.' (Emphasis ours.)"
The concluding paragraph of this quote which places the burden of showing freedom from fault upon the defendant animal owner, requires some elaboration, particularly in a case involving animal against animal.
One must begin with the general principle that in all cases the plaintiff bears the burden of proving his claim by a preponderance of the evidence. In a case such as this, the plaintiff is and should be required to present a prima facia case of dangerous and vicious propensities in the animal in question. Once this has been established, then the burden of proving freedom from fault shifts to the animal owner who must then show that either (1) his domesticated animal is not a vicious and dangerous animal, or (2) if he is vicious and dangerous the defendant had no such knowledge prior to the incident forming the subject matter of the suit.
In the instant case, the trial court gave no written reasons for attaching liability to the defendant. Of necessity, we must conclude the trial judge found that the Boxer had exhibited vicious and dangerous propensities and that this was within the knowledge of the defendant prior to the instant occurrence. We disagree with the trial court in this finding.
The testimony regarding each of the four incidents previously discussed, establishes that defendant, Mr. Smith, had knowledge of these incidents and moreover had investigated each thoroughly. His good faith in this respect is particularly noted by his investigation of the McCullough incident, even though the McCulloughs had never reported it to him. As to incident number 1, can it be said that a dog's inclination to chase and shake cats indicates "vicious and dangerous" propensities in the animal? We think not, particularly when we find that the dog did no physical injury to the cat after catching him. Incident number 2, involving the child's dead kitten, may be dismissed in view of defendant's uncontroverted testimony that the dog was locked up in the kennel at the time and also that the child said that the Boxer was not the culprit. Incidents 3 and 4 involving the McCullough and Blackmon children indicate that on each account the children were playing with the Boxer, in one case sitting upon the dog's head and attempting to remove something from its mouth. In neither case was there any significant injurynone which could not have been easily sustained through playfulness on the part of this large dog. Even as to the subject incident, we must note that there is no evidence to show how the fight started.
*639 Having concluded that the Boxer was not a vicious and dangerous animal, all other considerations are moot. Accordingly, the judgment of the trial court is reversed and the plaintiff's suit is dismissed at his cost.
Reversed.

ON REHEARING
ELLIS, Judge.
This case is before us on rehearing. The original judgment on appeal was granted in favor of the defendants, U. S. Fire Insurance Company and T. Frank Smith. There is no longer a necessity to belabor all of the circumstances and facts in this case since they have already been summed up in the original opinion. However, it would be well to discuss several points upon which this court feels that it misinterpreted the facts presented.
This suit was instituted for the wrongful death of plaintiff's toy Fox Terrier. It is admitted that defendant's Boxer inflicted the wounds from which the Terrier later died. The occurrence in which the Terrier was wounded was described in the original appellate opinion as a "fight", however, it is felt that the choice of this word is not exactly accurate under the circumstances presented. The only eye witness to the incident was a domestic servant in a nearby home. The pertinent testimony concerning the fatal injury to plaintiff's Toy Terrier was as follows:
"A. Well, I heard the other dogs, the other dogs was there barking, and I went out to hang up some clothes by the clothes line, and this little dog was running and this one was chasing him, but he was chasing him when I got out where I could see, but I thought they were playing at first, and then he caught him across his back and raised him up and was shaking him and dropped him down and he would run again, and then he did that forand then I seen blood and I knew he must have been biting him, and I went and started hollering at him, and he had him down on the ground, his feet was up and he just had his head down and I know he must have been biting, and he wouldn't quit; and so I left then and went and called Mrs. Middleton, that's the lady next door, to come and see if she could stop them because I was kind of afraid to get close to them and she came. Well, then when we got back she couldn't get up, she was just laying there, but she chunked him off and went and got someone from over at Mr. Kling's and they came and picked her up. Well, that's all I seen."
The facts related were the only ones elicited concerning the actual incident in which the Terrier was injured. Therefore, it is felt that there is no evidence presented of mutual combat or a fight, as such. The incident, as presented, would be better described as an attack or assault. It is felt that the absence of proof on the actual inception of the fracas should not redound to the benefit of the defendant. This would be a matter of defense, and there is no proof on this point.
As set forth in the original opinion herein, the defendant, T. Frank Smith, had previously received reports of four different incidents in which his Boxer was accused of hurting either animals or children. The facts presented in the record concerning these incidents are completely related in our original opinion. However, it would be well to outline these incidents again.
The first incident involved a cat. The Boxer picked up a neighbor's cat and carried it some distance into the defendant's yard. The cat's owner, a Mrs. Cox, testified that she screamed "like a Banshee" until the cat was released. The cat was released only when the Boxer saw its master coming out of the house. The cat was bruised but not bleeding. Mr. Smith saw this incident and kept his dog up for a *640 short time after that and watched him. Apparently he placed little significance upon this occurrence. However, the owner of the cat testified that the cat shook for several days after the attack, and that the cat now sits on top of the car in the garage whenever it ventures out of the house.
Later, a child in the neighborhood complained that Mr. Smith's dog attacked and killed one of her kittens. Mr. Smith investigated this and satisfied himself that this complaint was not well-founded. He found out from the child the date the kitten was killed and stated that his dog at that time was boarded at a veterinarian's. He also stated that he showed the child his Boxer and the child stated that this was not the dog that killed her kitten. The child's testimony was not introduced nor was the testimony of the veterinarian. There are objections to plaintiff's testimony concerning the child's statement as hearsay evidence. In view of the foregoing we attach little significance to the incident regarding the kitten.
In addition, there were two other incidents. A McCullough child who lived in the neighborhood was slightly bitten in an encounter with the same dog. The skin was not broken. The defendant admitted knowing of this incident but contended that the mark could have been caused by the dog's collar. This testimony conflicted with the testimony of the child's father who stated positively that it was a tooth mark.
At the time the defendant was investigating the McCullough complaint, he learned that his Boxer had previously bitten a Blackman child who also lived in the neighborhood. He did not see the marks on the child. Mr. McCullough, whose child had also been hurt, did see the marks, and said the bites had broken the skin.
From the record most of the circumstances surrounding both of these last incidents were vague. No eye witnesses to these occurrences were produced nor was the dog's collar produced. Mr. Smith apparently investigated both of these incidents but satisfied himself that his dog was not at fault. One question still before this Court is whether or not he was justified in so doing.
It is now felt that this court erred in its original opinion in finding, as a fact, that the Boxer was not a vicious and dangerous animal. The dog did have such qualities as evidenced by its attack on plaintiff's Toy Terrier. Another question is now posed. Had the dog acted in such a fashion as to indicate these tendencies to his master prior to the time he attacked the Terrier? This question must be resolved in the light of the pertinent jurisprudential rules which have been developed in similar cases. An accurate summary of these rules was also set forth in our original opinion:
"One must begin with the general principle that in all cases the plaintiff bears the burden of proving his claim by a preponderance of the evidence. In a case such as this, the plaintiff is and should be required to present a prima facie case of dangerous and vicious propensities in the animal in question. Once this has been established, then the burden of proving freedom from fault shifts to the animal's owner who must then show that either (1) his domesticated animal is not a vicious and dangerous animal, or (2) if he is vicious and dangerous the defendant had no such knowledge prior to the incident forming the subject matter of the suit."
Obviously, it would be logical to conclude that the Boxer in question is a vicious and dangerous animal, at least insofar as small dogs are concerned. Therefore, the burden of proof is squarely placed upon the defendant to prove that he, the defendant, had no knowledge of these propensities prior to his Boxer's attack on the Terrier.
After once again reviewing the record presented, it is felt that the defendant *641 failed in discharging this burden of proof. He was an eyewitness to the incident in which the cat was carried and bruised. He placed no significance upon this incident, but the owner of the cat did. The mere fact that dogs may consider domesticated animals of another species their natural enemy and possess an inborn tendency to pursue such other animals does not absolve or relieve the dog's owner from liability for injury, death or harm to animals of the other species when the owner either knows or is charged with knowledge that the disposition of his dog is such as to constitute a probable source of harm or injury to such other animals. In the case at bar, defendant Smith's explanation of the previous instances of alleged vicious action on the part of his pet (saving perhaps the one regarding the reputed attack on the kitten) was somewhat vague and sketchy. In most particulars his version of the circumstances attending the former occurrences is without corroboration.
It was also brought out that the defendant still does not consider his dog vicious or dangerous. The dog is still allowed to roam around the neighborhood when its master is home. Defendant contends that the children who were hurt by his dog were playing with him. This is not an excuse for injury. The general rule on this point is set forth in American Jurisprudence, Volume 2, verbo Animals, Section 49, pages 731-732 as follows:
"However the modern and more reasonable doctrine is that he need not have had actual notice thereof to make him chargeable; notice that the disposition of the animal was such that it would be likely to commit an injury similar to the one complained of is sufficient. The owner is liable if he knew or should have known its dangerous propensities or that it was a probable source of harm. But a cross and savage disposition on the part of a dog is not necessary in order to impose liability on its owner for its assault; he is equally responsible where it appears that the dog had a propensity to bite only in play, if he knew of such mischievous habit, and injury results."
The plaintiff has presented a prima facie case. He has proven that the defendant's dog attacked and fatally injured his dog. He has also proven that the defendant had personal knowledge of four prior incidents indicating that defendant's dog had vicious and dangerous propensities. At this point the burden of proof shifted to the defendant to prove lack of knowledge of the dangerous or vicious nature of his dog. For the reasons set forth above, it is felt that the defendant has failed to bear this burden of proof.
Since it is found that judgment should be rendered for the plaintiff, it is incumbent upon us to determine the amount of the award. Plaintiff seeks to obtain awards on four separate phases or bases of the Terrier's value to him. The value as a dog, irrespective of all other considerations is claimed. The loss of the dog for breeding purposes is also itemized. The loss of the dog as a watch dog is itemized separately. The loss of the puppies carried by defendant's female Toy Terrier at the time of her death is also itemized. Much has been said pro and con concerning these items of damage. Defendant's expert placed the value of the plaintiff's Toy Terrier at from forty to fifty dollars. Plaintiff's own expert knew the dog and placed a value of one hundred dollars on her. Defendant's expert admitted that the fact that plaintiff's Terrier was expecting a litter of four puppies at the time of her death increased her value but he would not venture to set an exact amount on this item. The general rules in setting an award such in a case such as this have been reviewed by counsel for the defendant, and we quote with approval from his brief:
"All of the above is summed up in the words of the Oregon Supreme Court in *642 McCallister v. Sappingfield [72 Or. 422], 144 Pac. 432 (1914), quoting from Prettyman v. O. R. & N. Co., 13 Or. 341, 10 Pac. 634, as to the value of a well trained sheep and cattle dog for which there was no market value in the area:
"When property which has a market value has been destroyed, and a recovery in damages is sought, the inquiry is as to the market value of such property. In such case, the market value of such property is the proper measure of damages. It furnishes the standard by which the damages may be ascertained and measured; for the money value thus ascertained is the price at which property could be replaced for money in the market. But property may have a value for which a recovery may be had if it is destroyed, although it may have no actual market value. `* * * there may have been no market value * * *' `If so, then some other criterion of value must be adopted. It is not necessary in any case that there should be an actual market value for an article in order to entitle the owner thereof to a recovery for its destruction.'" (Emphasis supplied.)
Therefore, if the defendant pays the plaintiff the full market value of the dog, as testified to by experts then it will be considered that the plaintiff is compensated for the loss of the dog. It is assumed that both experts took all of plaintiff's items of damage into consideration. Personal or sentimental considerations cannot enter into the fixing of an award such as this. For these reasons, it is felt that an award of $100.00 for the loss of plaintiff's unregistered Toy Fox Terrier is adequate.
Therefore, our original opinion on appeal is reversed, and judgment is granted for the plaintiff, Joseph B. Kling. The trial court's judgment is amended by reducing the damage for the loss of plaintiff's dog to $100.00 and as thus amended, it is affirmed, the defendant to pay all costs including the expert witness fee to Dr. Helouin in the amount of $50.00.
Amended and affirmed.