197 So.2d 92 (1967)
Mrs. Christine Davis TALLEY, Plaintiff-Appellant,
v.
TRAVELERS INSURANCE COMPANY, Defendant-Appellee.
No. 6960.
Court of Appeal of Louisiana, First Circuit.
March 13, 1967.
Rehearing Denied April 17, 1967.
Writ Refused June 9, 1967.
*93 John Gallaspy, of Richardson & Gallaspy, Bogalusa, for appellant.
France W. Watts, of Watts & Watts, Franklinton, for appellee.
Before LOTTINGER, REID and SARTAIN, JJ.
SARTAIN, Judge.
Plaintiff appeals from a judgment of the district court denying her recovery of damages for injuries sustained by her when a horse, owned by defendant's insured, bit her right hand and necessitated the removal of a distal phalanx of her index finger.
Plaintiff, Mrs. Talley, and her husband were visiting their son-in-law, Mr. Fussell, defendant's insured, on December 26, 1963, at Mr. Fussell's farm. They all lunched together and afterwards the Talleys asked Mr. Fussell, who was recuperating from a leg injury, if they could help him complete his chores before they departed. He agreed. Before going to tend to the pigs at the rear of the farm, Mr. Fussell asked Mr. Talley to fill a hamper of corn and plaintiff to take one ear of corn and lead the horse to a nearby pasture. The horse was in a fenced lot adjacent to the barn. The lot was relatively barren of food for the horse, though it did contain the corncrib.
Mr. Fussell testified that the horse had not eaten since the evening of December 24, or for about two days. Because of his knowledge that if unfed for too long a time, a horse might "turn around and kick somebody", he asked plaintiff to toll, or to hold an ear of corn in front of the horse to coax it from the lot and into the pasture where it could feed. Mr. Talley first threw some nubbings in the lot for the horse to eat; the object was to keep the horse away from the corncrib while plaintiff went to get the ear of corn. While plaintiff was shucking the ear of corn, the horse quietly came up behind her, and in an attempt to reach over her shoulder to bite the corn, the horse caught plaintiff's right hand, particularly her right index finger, in its teeth.
From this bite plaintiff sustained a great deal of pain and suffering, made several visits to her doctor, and became hospitalized for an operation, the amputation of the distal phalanx of her right index finger. Her finger has retained a great deal of tenderness, and the amputation resulted in certain disability.
*94 In an attempt to show that Mr. Fussell knew or should have known of the peril one takes with a horse which had not eaten for two days, plaintiff called one John M. Yates, a professional rodeo rider and cattle rancher, as an expert in the field of ordinary horse behavior, Mr. Yates was of the opinion that whenever horses are not fed for nearly forty-eight hours, they become hungrier and will "bite the first thing he sees that even looks like feed", though the horse will not become necessarily "wilder". On cross examination, Mr. Yates testified as follows:
"Q In your experience with horses, isn't it true, Mr. Yates, that when you shuck an ear of corn for a horse, just about any horse is going to reach out and get that ear of corn, isn't that right?
A Not necessarily. It all depends on how he is trained, unless he is awful hungry, he is going to try to get that corn and whatever is there handy he may get it also.
* * * * * *
Q And you don't know anything about how this horse was trained?
A I never seen the horse."
Moreover, Mr. Fussell stated that he had raised the horse from a colt, that the horse was always gentle, that his own daughters, ages 18 and 10 respectively, often rode the horse, and that he had never had any trouble with the horse. He testified:
Q Do you feed this horse regularly?
A Well I wouldn't say regular, more or less when I use her you know. When I am using her what I call regular but when I wouldn't be using her she would be in the pasture part of the time.
Q On any occasion you fed her, have you ever had any trouble with her?
A No.
Q Insofar as trying to bite you or kick you or anything?
A No.
Q Did you have any reason to believe on the day that this accident occurred that the horse would act any different than she normally acted?
A Well I didn't see any difference in her myself.
* * * * * *
Q After the accident happened, when was the next time that the horse was fed, do you remember?
A I am pretty sure it was that next morning. I don't think I came back out to the barn that night.
Q Did you feed the horse then?
A I believe.
* * * * * *
Q Mr. Fussell, when you next fed the horse, did the horse act unusual in any way?
A Well she might have been a little more anxious to eat but I wouldn't say she acted strange or nothing. Well she had to be because she had been in there a good little while.
* * * * * *
Q Mr. Fussell, when you feed a horse out of your hand, what do you do?
A Well I generally, if I am feeding her an ear of corn, I generally shuck it and hand her the ear of corn, just let her take the whole ear. I don't feed her like that though when I really feed her. I put her in the stable and put the corn in a trough but I have come up to her in the pasture and give her an ear of corn. Well that is the way I catch her most of the time, just take an ear of corn down there and you can walk right up to her."
*95 In addition, plaintiff, who was age 69 at time of the injury, testified that she knew a great deal about horses.
"Q Mrs. Talley, do you live on a farm yourself?
A Yes.
Q Have you ever led a horse out to pasture before?
A Why let me tell you, I was raised with horses and cattle and I could take any of my cows and my horses, I could get a ear of corn or anything and toll them any where I wanted to go. We do that right now, my husband and I."
It was stipulated that defendant had issued an insurance policy that would protect Mr. Fussell against the type of injuries for which damages are herein sought. Thus the issue presented here as in the trial court is whether or not Mr. Fussell, as owner of the horse, is guilty of negligence. In his reasons for judgment the trial judge stated:
"I do not believe that there has been any showing in this case that the animal acted in a vicious manner. All the horse did was attempt to eat a corn shuck which was being held in Mrs. Talley's hand, and, quite by accident, bit off the tip of her finger. * * * Much as I sympathize with Mrs. Talley, I do not believe that the injury which she suffered falls within that category which might have reasonably been anticipated under the surrounding circumstances. I do not believe that Mr. Fussell's actions were anything other than those of an ordinarily prudent man."
Accordingly, he denied recovery. The record in this case and the applicable law clearly support the ruling of the district judge in finding for the defendant.
The law with respect to personal injuries caused by domestic animals is well settled. For one to recover for such injuries, they must satisfy the burden of proving (1) the existence of dangerous propensity of the animal inflicting the damage, and (2) knowledge of such propensity on the part of the owner of the animal. These dual requirements for liability have been uniformly adopted by our courts. Tamburello v. Jaeger, La.App., 176 So.2d 707; Kling v. United States Fire Insurance Co., La.App., 146 So.2d 635, 1 A.L.R. 2d 1011; Mercadel v. Phoenix of Hartford Insurance Co., La.App., 144 So.2d 670; Espinosa v. Hill, La.App., 138 So.2d 12; Marsh v. Snyder, La.App., 113 So.2d 5; Hartman v. Aschaffenburg, La.App., 12 So.2d 282.
In applying the above rules, we wish to quote from Tamburello v. Jaeger, supra, language which we think is particularly applicable here: (page 709)
"There is no presumption that domestic animals are dangerous to man or that an animal which injures another was known to its owner to be dangerous. This must be proven. It is not enough that there be a potential danger, but there must be a propensity, that is, a natural inclination to be dangerous; a proneness toward behavior not consistent with normal or expected behavior likely to cause injury. The existence of this propensity is what we must look for in the instant case."
Plaintiff argues that the defendant's insured was negligent in sending plaintiff out to lead a "hunger-crazed" horse without forewarning her that the horse had not been fed for forty-eight hours. In support, he offers expert testimony that in general horses do tend to bite when hungry. Accepting this testimony in its most favorable light for plaintiff, the evidence itself negates the assumption that the horse in question was so affected or otherwise reacted as indicated by plaintiff's own witness. This horse did not kick or even bite plaintiff in a manner that would evidence any dangerous propensity. Defendant successfully rebutted any inference to be drawn from *96 the fact that the horse would be prone to bite when unfed for a period of two days when the owner clearly stated that the day after the injury, which would have been three days between feedings, the same horse did not act "strange" or differently.
For the above and foregoing reasons the judgment appealed from is affirmed at appellant's costs.
Affirmed.