DORE, Judge.
Plaintiff, Mrs. Angella Blanchard, widow of Leopold LeBlanc, alleges that on or about December 1, 1947, while she was slowly and cautiously making her way along Dewey Street, and at or about municipal No. 225 of said street, said municipal number being the residence of Gladys and Caffrey Dean, in the City of Lafayette, a dog, allegedly belonging to and owned by the defendant, while in the care and custody of Gladys and Caffrey Dean as defendant’s agent, suddenly and viciously ran toward her, leaped onto her body, biting her about the right arm and hurling her body to the ground, breaking her right arm and bruising her body. The plaintiff further alleges “that the viciousness and dangerousness of the dog was well known to the defendant and its custodians, Gladys and Caffrey Dean, as well as to the general neighborhood where the dog was being kept at the time of the attack upon your petitioner.”
The amount of damages claimed is made up of pains and sufferings, broken arm with resulting impairment and for medical expenses incurred and to be incurred, aggregating the amount of $3,750.00.
Defendant denied all the allegations in the petition and in further answer, alleg *211 ed that the dog mentioned in plaintiff’s petition had always been of a kind temper and never bit any one nor attempted to bite any one or ever gave occasion to suspect that it would bite any one. He further alleged, in the alternative, that should the Court find him responsible for the said accident, plaintiff’s negligence or contributory negligence was the proximate cause of the accident, and consequently barred any recovery by her. Her negligence, as alleged, consisted in imprudently continuing to “harass, tease and aggravate the dog with unnecessary and loud shouting directed towards the dog and at the same time flailing her arms in a threatening and menancing manner towards the said dog.”
In his written reasons for judgment, the District Judge reached the conclusion that the plaintiff had failed to sustain the burden of proof and had failed to establish the verity and correctness of her claim to a legal certainty, and dismissed her suit at her costs. Plaintiff has appealed.
The suit is brought under Civil Code, Article 2321 which makes an owner of an animal responsible for the damages caused by it. In connection with this article, the courts of this State have applied Civil Code, Article 2315, providing for liability for- fault, and Civil Code, Article 2316 providing for liability for negligence. In other words, a person who is bitten by a dog must show that the dog belonged to defendant and that the defendant was at fault and/or negligent.
The first and most serious question presented on this appeal is the ownership of the dog which allegedly caused the injury complained of. On that score, we find the evidence conflicting and contradictory.
It appears from the testimony of defendant’s wife that a sister of hers living in Alexandria, Louisiana, gave her this dog as a pup. This pup was taken to her home at Lafayette wherein it remained until June, 1947. Mrs. Thibodeaux then,,in June 1947, gave the pup to Gladys Dean, her colored cook, who took the dog to her home. At this time it may be proper to state that Gladys Dean resided with her husband at municipal No. 225 Dewey Street, in the City of Lafayette, a colored section of the said city, while defendant lived in another section of the city, somewhat remote from Dewey Street, and that the accident or injury occurred at about the premises of Gladys Dean. The defendant in his testimony absolutely denies the ownership of the dog, testifying that the dog had been given to his wife as a pup and that the dog was given by his wife to Gladys Dean in June, 1947. Gladys Dean in her testimony, admits the gift and ownership of the dog ever since June, 1947.
In seeking to prove the ownership of the dog in the defendant, the plaintiff mainly relies upon admissions made by him and Gladys Dean to Police Officer Benton, who was called to investigate the case.
Police officer Benton testified that he was detailed to make an investigation of the accident. He proceeded to the residence of Gladys Dean about an hour and one-half after the accident. Gladys Dean informed him who was the owner of the dog. He advised Gladys Dean to keep the dog tied for eleven days for observation. A couple of days thereafter, he called defendant’s office and was informed that defendant was out of his office; he left word for defendant to call him and later on defendant called him. In this conversation, the defendant told him, the officer, that the dog was his and was at his cook’s, Glady’s, house and that he would move it from there; “he said it was a very good dog and he would try to take it in the country and if he could not he would call me back and let me pick it up. He said the dog was going to have puppies and that they usually got out of line, but it was a very good dog. * * * That month she was going to have puppies.” The officer did not go back to Gladys Dean’s house because some other officer was assigned on duty and he did not follow up the case. On cross-examination, he stated that defendant seemed surprised to know that the dog had bitten the plaintiff; and acted as if he had not been informed before. He reiterated that Gladys Dean had informed him twice that defendant was the owner of the dog, and that she was keeping the dog for defendant *212 and would contact the defendant to do something about it. He describes the dog as of about two and one-half feet high, of about twenty-five pounds in weight, of yellow-greyish in color, and an “alley dog” in kind.
Gladys Dean, the admitted keeper or har-borer of the dog, testified on direct examination that she was the owner of the dog; that she got the dog from Mrs. Thibo-deaux in the beginning of June, 1947; that she fed the dog at her own expense; that she had the custody of the dog continuously from the beginning of June, 1947 until around Christmas time of 1947, when it died presumably of poisoning; that at the time of the accident or injury, the dog was pregnant; she was working for Mrs. Thibodeaux prior to and on June 1, 1947, and continuously to and after December 1, 1947, the date of injury. On cross-examination, she admits that she told Officer Benton that the dog belonged to defendant, giving as her reason for so stating, “because I got so upset and scared at the moment when he came to the house and I saw him getting out of his car and he was twirling a little stick and I didn’t know if he wanted to take me or my husband to jail. That is why I said at the moment that the dog belonged to Mr. Thib-odeaux.” She again repeats that she was the owner of the dog, having acquired it by donation from Mrs. Thibodeaux in the beginning of June, 1947.
Defendant, on being called for cross-examination under the Act, testified that the dog formerly belonged to his wife, she having acquired it by donation from her sister in the latter part of 1946 and that his wife disposed of the dog in the early part of June, 1947. He states that Officer Benton inquired of him as to the ownership of the dog and that he told Officer Benton that the dog formerly belonged to his wife; outside of this statement he categorically denied having told Officer Benton anything else as testified to by the said officer. Further in his testimony, he denies having placed the dog in the custody of Gladys and Caffrey Dean; however, in answer to a question of who did, he answers, “Mrs. Thibodeaux. She is the owner of the dog.” He further states that on June 2, 1947, upon request of his wife, he personally had the dog vaccinated.
At this time we might mention that we find this witness to be very evasive in his answers to questions. We see no reason why Officer Benton should have testified as to what was told to him by defendant if in truth and in fact the defendant had not so told him.
The testimony of Miss Anne Turren-tine is to the effect that the latter part of November, 1946 she gave to her sister, Mrs. Sidney S. Thibodeaux, the wife of defendant, a part airdale puppy of about four weeks old. Mrs. Sidney Thibodeaux testified that this puppy was taken by her to her home at Lafayette; that about the middle of June, 1947, she gave this dog to her cook, Gladys Dean, who in turn took the dog to her house as her own. The reason given, for the disposition of the dog is that defendant’s- children became tired of the dog.
Facts which may be considered in determining the issue under consideration are that' it is undisputed that the dog in question had been in the possession and care of Gladys Dean for some six months and away from the premises of defendant for that length of time, and furthermore, the location of the premises of Gladys Dean and the situs of accident were of sufficient distance from the residence of the defendant so as not to create a presumption of ownership and/or control of the dog in defendant. No other reason but the one stated by defendant, that is, that his children had gotten tired of the dog, has been given as the reason for turning the dog to Gladys Dean. The fact that the dog was pregnant does not enter into this phase of the case. According to the evidence, delivery of the pups was expected during the month of December, a lapse of six months or more after Gladys Dean obtained possession. We understand that the period of gestation for a dog is much less than six months.
The burden of proof lies on the plaintiff to prove the ownership of the dog in defendant. Has she done so? We *213 have our serious doubt that she has sustained it. The most that can be said is that probably the defendant, or his wife, was the owner of the dog. Plaintiff points to the fact that defendant had the dog vaccinated on June 2, 1947, and argues that such is a circumstance to be considered. However, according to the testimony of Mrs. Thibodeaux, the defendant, and Gladys Dean, the dog was given after that date. It appears from the reading of the opinion of the trial judge that he was also of -the opinion that plaintiff had failed to discharge the burden of proof on the question of ownership.
However, admitting for mere sake of argument that the plaintiff has sustained the burden of proof that defendant was the owner of the dog, then we say that on the question of liability, we find that the discussion of the facts and law involved in this case have been fully set out in the written reasons for judgment by the trial judge. We quote as follows:
“If the defendant be the owner, did he have any knowledge of the vicious propensities or the acts of misconduct of the dog? Were there facts and circumstances from which he can be presumed to have had knowledge of its vicious tendencies or actions that would cause injury to another? Did Gladys and Caffrey Dean have such knowledge as custodians and can that knowledge, if any, be imputed to the defendant? :
“The defendant testified that the dog was given to his wife while just a puppy and that it was kept by them from November, 1946 until early June 1947 when it was given to Gladys Dean. That during that time it never manifested any viciousness, and due' to the fact that the children had become tired of it, was given to Gladys Dean. The record is void of any evidence that anyone ever reported the tendencies of the dog to him, or that he knew of its habits of misconduct. The first information, according to the evidence, concerning the dog was when officer Benton had the telephone conversation with him, subsequent to the accident.
“The. evidence is likewise vague , as to the knowledge, of Gladys and Caffrey Dean, John Comeaux, husband of plaintiff’s granddaughter, testified that he lived next door to the Deans, that he had eight children and that they played around the neighborhood, yet the dog had never bitten any of them. According to his testimony and that of Dewey Francois, a a dog -had bitten Francois on Thanksgiving day. Yet neither her nor Francois reported the fact to anyone. Comeaux did talk to Caffrey Dean about the dog, yet Francois told no one about the dog. While Mrs. Comeaux testified that the dog had never bitten her children, she would not permit them to play with it as she was afraid.
“The plaintiff and'her grandson, Joseph Himel, testified that the dog barked and jumped the fence and chased Himel while riding by on his bicycle. Mr. and Mrs. Comeaux did not testify that the dog barked, jumped the fence or chased passerby. Comeaux did say that the dog rushed to the fence and could have jumped it. Dalton and Rita Dean corroborated the plaintiff and Himel as to the dog barking and chasing Himel as he passed the house on the day of the accident. However, there is no evidence in the record showing that the dog was in the habit of chasing and barking at other people on other occasions.
“Several neighbors testified as to the character of the dog. All but one, had several young children who played with the dog and that neither they nor the children were afraid of it. One knew the dog to be a good dog and had seen children playing with it. ‘ Evidently the particular section of the City of Lafayette in question is thickly populated area, yet no other disinterested parties testified as to the conduct and habits of the dog. The only notice either Gladys or Caffrey Dean received, concerning the dog was at the time John Comeaux talked to Caffrey, yet he did not tell any one else before the accident in question of the Francois incident because ‘did not want to create hatred,’ and does not say that he told Caffrey Dean of the Francois incident.
*214 “In every case in our reports where the owner was held liable there was evidence that the animal was known by the owner to be dangerous or had injured someone at some prior time or that the dog was in the habit of jumping and barking at any body that passed by. DeLisle v. Bourriague, 105 La. [77] 84 [29 So. 731, 54 L.R.A. 420]; Montgomery v. Koester, 35 [La.] Ann. 1091 [48 Am.Rep. 253]; McGuire v. Ringrose, 41 [La.] Ann. 1029 [6 So. 895]; Bentz v. Page, 115 La. 560 [39 So. 599]; Serio v. American Brewing Co. 141 La. 290 [74 P. 998, L.R.A.1917E, 516]; Mercer v. Marston, 3 La.App. 97.
“In the Mercer case the defendant’s daughter as well as others testified that the dogs in question jumped off the porch and barked at anyone passing, and while the law makes no distinction between an animal dangerous from viciousness and one merely mischievous or dangerous from playfulness, the court held that the defendant, in view of the testimony of the dogs’ bad habits had failed to rebut the presumption of knowledge and the evidence showed knowledge on the part of the owner. There are distinguishing features in all the cases, as in the instant one.
“ ‘The owner of a gentle dog which has always been of a kind temper and has never attempted to bite anyone and has never given occasion to suspect that it would bite anyone is not liable in damages by the mere fact that the animal has bitten someone.
“ ‘The owner of a domestic animal is not liable for any injury committed by it when he shows affirmatively that the animal was not previously vicious and that he had no knowledge that it was vicious.’ Martinez v. Bernhard, 106 La. 368 [30 So. 901, 55 L.R.A. 676, 87 Am.St.Rep. 306].
“ ‘Damage may be done by a domestic animal kept for use or convenience, but the rule is that the owner is not liable to an action on the ground of negligence without proof that he knew that the animal was accustomed to do mischief * * *. Domestic animals may injure the person or property of another, but the courts of justice invariably hold that if they are-rightfully in the place where the injury is inflicted, the owner of the animals is not liable for such injury, unless he was accustomed to be vicious, and in suits for such injuries such knowledge must be alleged and proved, as the cause of action arises from the keeping of the animal after the knowledge of its vicious propensity.’ Spring [Co.] v. Edgar, 99 U.S. 645 [25 L.Ed. 487].
“This dog never displayed vicious-propensities to his knowledge, no one says-it snapped at or had bitten anybody before except Dewey Francois, which was unreported; the children in the neighborhood played with it; the only one it ever chased was Joseph Himel. What is said about this dog is true with every dog,, that is dogs of every breed are liable to-bite. But because every dog may become obnoxious in its habits and conduct or may-bite under certain conditions, it does not follow that it is negligent or wrong to have a dog.
“Plaintiff must prove that the defendant owned the dog; that the dog was vicious or had habits and conduct that would lead one to believe that it intended harm, in-order to charge defendant with negligence, however slight; or the defendant may prove that the dog was not vicious or that he did not know that it was vicious, and thus absolve himself from liability.”
Finding no reversible error committed' by the trial judge either in his findings of facts or the law appertaining to cases of' that nature, the judgment appealed from, is affirmed.
ROBERT D. JONES, J., sitting ad hoc.