190 So.2d 136 (1966)
Richard J. VOELKER, Jr., Individually and as Administrator of the Estate of Richard J. Voelker, III, et al.
v.
LIBERTY MUTUAL INSURANCE COMPANY et al.
No. 2258.
Court of Appeal of Louisiana, Fourth Circuit.
July 5, 1966.
Rehearing Denied October 5, 1966.
*137 Henican, James & Cleveland, Murray F. Cleveland and C. Ellis Henican, Jr., New Orleans, for plaintiffs-appellees.
Jones, Walker, Waechter, Poitevent, Carrere & Denegre, John V. Baus and John C. Combe, Jr., and Jesse Guillot, New Orleans, for defendants-appellants.
Before YARRUT, SAMUEL and BARNETTE, JJ.
SAMUEL, Judge.
This action for damages arises out of personal injuries sustained by a small boy allegedly as a result of being bitten by a dog. Plaintiffs are the parents of the child. The father, as administrator of the estate of his minor son, seeks recovery for the child's injuries; individually, he seeks recovery for past and future medical and other expenses incurred and to be incurred as a result of those injuries; and he and the child's mother, in their individual capacities, also seek recovery for their own mental anguish and emotional suffering resulting from the alleged biting. The two defendants, the owner of the dog and his insurer, filed an exception of no right or cause of action to the parents' claim for their own mental anguish and suffering and an answer denying liability.
The case was tried to a jury. The trial court maintained defendants' exception of no cause of action to the parents' claim for damages to themselves and did not permit evidence of those claims to be heard by the jury, although such evidence was taken and is part of the record. The jury returned a verdict in favor of the father, for the use and benefit of the child, in the sum of $15,000 and in favor of the father, in his individual capacity, in the sum of $7,500 for present and future medical and hospital expenses. The court rendered judgment in accordance with the verdict on November 30, 1965. On the same date the court also rendered a separate judgment maintaining the exception of no cause of action and dismissing the parents' personal demands for damages to themselves.
Defendants have appealed from "the judgment of November 30, 1965". The child's parents have answered the appeal, the father seeking an increase in quantum from $15,000 to $39,500 for the child's injuries and an increase in the $7,500 award for his medical and hospital expenses to $7,645, and both parents seeking a recovery for their own mental anguish and suffering. *138 In this court defendants have filed a motion to dismiss that portion of the answer to the appeal which seeks recovery by the child's parents for damages to themselves. Both the motion and the merits are before us.
The child, who was approximately three years of age at the time of the incident, lived with his parents in New Orleans on Loyola Street one house removed from the residence of the dog's owner. The dog was a bulldog or Boston terrier (the testimony is conflicting on this point) named "Prince", about 14 inches in height. The boy was playing with other children in the back yard of the house between the plaintiff's residence and the residence of the dog's owner. No one who testified actually saw the dog bite the child but several witnesses saw the dog chasing a cat (which it subsequently killed) and almost immediately thereafter two of those witnesses heard a commotion in the back yard where the children were playing and upon rushing to the yard saw the Voelker child "covered" with blood. His mother was notified of the incident and as soon as she arrived the boy told her that "Prince" had bitten him. The medical testimony is to the effect that the boy's wounds had the appearance of being dog bites and the record contains no evidence even suggesting that the child's injuries could have been caused in any manner other than as alleged by plaintiffs. We are satisfied, as was the jury, that the child was bitten by the dog "Prince".
Nor is there any doubt that the dog was vicious and dangerous and that these propensities were known to the owner. The testimony of several of the neighbors is that the dog was dangerous and they were afraid of him. And on a previous occasion the dog had bitten its owner's grandson in the face. The parents of that child testified they had pleaded with the defendant-owner to get rid of the dog and had required that the dog be locked up whenever they visited the grandparents' home with their child. The owner's wife did not testify at the trial because of illness but her deposition was received in evidence. In that deposition she testified she had also pleaded with her husband to get rid of the dog after her grandson had been bitten, but he had refused to do so. And she mentioned another incident when the dog had bitten a delivery boy.
Under LSA-C.C. Arts. 2315 and 2321, and under our jurisprudence, in the absence of other negligence the owner of a dog is not liable for injuries inflicted by it when the animal suddenly and without prior warning displays a vicious nature, but if there has been any prior occurrence known to the owner and sufficient to give notice that the animal is vicious or dangerous, there is liability on the part of the owner for injuries caused by the animal as a result of that vicious or dangerous propensity. Kling v. U. S. Fire Insurance Company, La.App., 146 So.2d 635, 1 A.L.R.3d 1011; Mercadel v. Phoenix of Hartford Insurance Co., La.App., 144 So.2d 670; Marsalis v. La Salle, La.App., 94 So.2d 120; Blanchard v. Thibodeaux, La.App., 44 So.2d 210; Hartman v. Aschaffenburg, La.App., 13 So.2d 532; Tillman v. Cook, La.App., 3 So.2d 230; Abraham v. Castille, La.App., 158 So. 650; Woulfe v. D'Antoni, La.App., 158 So. 394.
In this court defendants-appellants contend the trial court erred in refusing to require that plaintiffs accept a defendant admission of liability for any damage caused by the dog, in giving or refusing to give certain instructions to the jury and in allowing the following evidence to reach the jury: certain alleged hearsay testimony, testimony concerning settlement of the prior claim made on behalf of the owner-defendant's grandson and, in view of defendants' offer to admit liability for damage caused by the dog, testimony concerning insurance coverage and previous incidents showing the dog's dangerous propensities. Appellants also contend the amount awarded is excessive.
In the trial court defendants did offer to admit liability for any damage actually caused by the dog. But the offer did not include an admission, and defendants *139 refused to admit, that the dog had bitten the Voelker child. We know of no law requiring plaintiffs to accept this offer to admit, which would restrict and incumber orderly proof of plaintiffs' case, and appellants have called our attention to no such law. Since the offer was not accepted, plaintiffs properly were permitted to show insurance coverage (we note the amount of coverage was not made known to the jury), a fact they were required to prove since this is a direct action against the insurer-defendant, and to prove previous incidents showing the dog was vicious or dangerous, an indispensable part of their proof as to liability.
There is some hearsay testimony in the record concerning prior incidents of viciousness on the part of the dog and testimony admitted for the purpose of showing settlement of the prior claim made on behalf of the owner's grandson is questionable under the rule relative to offers of compromise. But completely disregarding the testimony relative to settlement of the prior claim and the isolated hearsay testimony concerning prior incidents of the dog's viciousness, the record contains abundant competent testimony that the dog was vicious and dangerous and that its owner had full knowledge of that fact.
We therefore find it unnecessary to discuss in more detail the hearsay testimony, the testimony regarding settlement of a prior claim or the instructions to the jury of which appellants complain. The competent evidence contained in the record before us overwhelmingly establishes the fact that the defendants must be cast in damages for injuries to the child and for damages in the form of medical and other expenses which have resulted or will result from those injuries. The jury correctly held there was liability on the part of the defendants for those damages. Had it reached a contrary verdict we would reverse. Under our law, particularly under Article 7, § 29 of our Constitution, we are required to pass on both the law and the facts. None of the errors complained of are of sufficient consequence as to entitle defendants either to a reversal or to a remand for a new trial. See Soprano v. State Farm Mutual Automobile Ins. Co., 246 La. 524, 538, 165 So.2d 308, 313; Succession of Land, 212 La. 103, 136, 31 So.2d 609, 620; Guerra v. W. J. Young Construction Company, La.App., 165 So.2d 882, 885; Bertoli v. Flabiano, La.App., 116 So.2d 76, 79, 80.

QUANTUM
The boy was severely bitten, even chewed. He suffered multiple bites on the left ear, right eyebrow, upper and lower right eyelids, forehead, chin, the pre auricular region of the face, left side and front of the face, and both forearms. He bled profusely and was taken to a pediatrician who administered first aid and a tetanus booster and called in an ophthalmologist and a surgeon, making arrangements with those physicians to meet at a hospital for emergency surgery. The pediatrician followed the boy to the hospital and remained with him throughout the operation. The surgery was done under a general anesthetic. The ophthalmologist performed corrective eye surgery at the same time as the general surgeon, assisted by a resident in surgery and an intern, was performing surgery on other injured parts of the child's body. The following week a general anesthetic was again administered and the stitches were removed.
The record contains medical and phychiatric testimony given by the pediatrician, Dr. Henry G. Simon, the operating ophthalmologist, Dr. J. William Rosenthal, the operating general surgeon, Dr. Marshall L. Michel, a plastic surgeon, Dr. Richard W. Vincent, and two child psychiatrists, Drs. Jack E. Chappius and Edward H. Fedderman. The medical testimony is to the following effect:
There were three lacerations of the right eyelid and a rupture of the torsal plate above and below. The eye itself was not injured. Approximately five sutures were taken in the torsal plate, seven in vertical *140 skin lacerations and six or seven in the lower lid. Lacerations to the remainder of the child's body were extensive and contaminated, requiring twenty-six skin sutures. There was a deep wound in the forearm extending into the muscle and requiring a drain. Four weeks after the occurrence of the injuries the plastic surgeon found the following: a scar about 2 cm. in length beginning in the outer third of the eyebrow and extending upward and medially, a Y shaped scar extending upward from and continuing through the middle third of the eyebrow, the vertical portion of which measured a little over 2 cm. in length and the medial portion measured about 1 cm. in length including an area where the eyebrow was not present due to the scar cutting through, a small scar less than 1 cm. in length just in the edge of the hairline, a healed wound on the lower border of the eyelid causing some absence of eyelashes, several scars about 1 cm. in length on the left side of the face, an irregular scar anterior to the left ear about 1.5 cm. in length, a somewhat thickened scar on the left earlobe and a scar under the chin about 1.5 cm. in length. The plastic surgeon examined the child again the day before the trial, approximately 21 months after his first examination, and on that occasion found the boy had made considerable improvement. However, some of the scars remained visible and were permanent. Surgery was not suggested at that time but the doctor was of the opinion that plastic surgery would be in order if the scars remained when the boy was in his early teens (a distinct probability) and he felt that such surgery should be performed then. The general surgeon was of the opinion that the psychological element was even more important than the facial scarring. We note that, with the exception of the remaining facial scars, the boy appears to have made a complete recovery from his physical (as distinguished from mental) injuries.
The two child psychiatrists found the dog bite incident had a pronounced effect on the child and would have a continuing affect on his future personality development. They felt it would not clear up rapidly or within the near future spontaneously. They recommended psychotherapy two or three times a week for one and one-half to two or three years. In their opinion failure to so treat would result in a continuation of excessive anxiety about fear of bodily harm and would have a secondary development in a pathological formation in the child's personality which could be of disabling proportions as the child continued to mature. Without treatment they felt the boy might be very neurotic or disturbed.
We are of the opinion that the jury did not abuse the "much discretion" vested in it by LSA-C.C. art. 1934(3) in assessing damages for the child's injuries in the amount of $15,000. Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64; Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149; Phillips v. Cohen, La.App., 183 So.2d 473.
Medical and hospital expenses which had been incurred as a result of the child's injuries at the time of the trial amounted to $1,125. The plastic surgeon, Dr. Vincent, testified future plastic surgery would involve two operations at a total approximate cost of $1,700 and, if a third procedure was indicated, an additional cost of $250, or an overall total of $1,950. Dr. Chappius testified the total anticipated psychiatric treatments would cost $4,500. Thus, according to the uncontradicted evidence, the total past and future medical and hospital expenses amount to $7,575 and it is apparent to us that the jury intended to award this full amount. Accordingly, we will amend the judgment relative to expenses so as to add $75 to the $7,500 award. The other amount of which complaint is made by appellee in his answer, $70, consists of a claim for the dress which Mrs. Voelker was wearing on the day of the incident and *141 for various miscellaneous items of expense incurred as a result of the hospitalization of the child. The jury did not award this amount and, in our opinion, properly so. Insufficient proof was made to substantiate that claim.

THE MOTION TO DISMISS
In support of their motion to dismiss Mr. and Mrs. Voelker's answer to the appeal, by which answer those parties seek to appeal the judgment dismissing their personal claims for damages resulting from the injuries sustained by their child, appellants argue the parents of the boy are not "appellees" in the appeal taken by the defendants within the intendment and meaning of that word as used in LSA-C.C.P. Art. 2133.
There appears to be some merit to appellants' argument particularly insofar as the same applies to Mrs. Voelker. But under our firmly settled jurisprudence, including cases handed down by the Supreme Court of Louisiana which we are required to follow, Mr. and Mrs. Voelker have no cause of action for their personal claims for damages. Clearly under our law, a plaintiff may not recover for mental pain and suffering occasioned by injury to the person of another. Brinkman v. St. Landry Cotton Oil Co., 118 La. 835, 43 So. 458; Sperier v. Ott, 116 La. 1087, 41 So. 323, 7 L.R.A.,N.S., 518; Black v. Carrollton R. Co., 10 La.Ann. 33; Johnston v. Fidelity National Bank of Baton Rouge, La.App., 152 So.2d 327; Vinet v. Checker Cab Company, La.App., 140 So.2d 252; Honeycutt v. American General Insurance Company, La.App., 126 So.2d 789; Covey v. Marquette Casualty Company, La.App., 84 So.2d 217; Hughes v. Gill, La.App., 41 So.2d 536; Davies v. Consolidated Underwriters, La.App., 14 So.2d 494; Edwards v. Miranne, La.App., 11 So.2d 271; Seligman v. Holladay, La.App., 154 So. 481; Sherwood v. Ticheli, 10 La.App. 280, 120 So. 107; Alston v. Cooley, 5 La.App. 623; Barrere v. Schuber, 5 La.App. 67; Knox v. Allen, 4 La.App. 223.
In view of the established jurisprudence we prefer not to pass on the motion to dismiss the answer. We pretermit that question and affirm the trial court judgment which maintained the exception of no cause of action and dismissed the suit of Mr. and Mrs. Voelker for personal damages to themselves.
For the reasons assigned, the judgment rendered in this matter on November 30, 1965 in accordance with the jury verdict is amended only insofar as to increase the award in favor of plaintiff, Richard J. Voelker, Jr., in his individual capacity, from the sum of $7,500 to the sum of $7,575. As thus amended, and in all other respects, that judgment and the judgment maintaining the exception of no cause of action and dismissing the suit of Mr. and Mrs. Voelker for their own mental anguish and suffering are affirmed; costs in this court to be paid by the appellants.
Amended and affirmed.