CHASEZ, Judge.
Plaintiff, Leonard A. Losch, instituted this tort suit individually and on behalf of his minor daughter, Melissa Losch, against Travelers Insurance Company for damages sustained when a dog owned by defendant’s insured, Warren Gettys, allegedly attacked Melissa, causing bodily injury.
After a trial on the merits judgment was rendered in favor of the plaintiff and against defendant in the sum of $4,504.27. From this judgment defendant has suspen-sively appealed.
Warren Gettys was, at the time of the incident, the owner of two dogs, a female beagle named “Dixie” and a male mongrel or “mixed breed” named “Bay” or “Babe”. Both dogs at that time were kept in a fenced enclosure or kennel which was located inside Gettys’ fenced yard. On February 13, 1970 Melissa Losch, age four, and Maria Mouser were playing in the Gettys’ back yard with Genine Gettys and Kimberly Gettys, the two daughters of Warren Gettys. Warren Gettys went to the kennel where the two dogs were enclosed and opened same in order to clean it, whereupon both dogs came out of the kennel. Shortly thereafter a commotion was heard from the children to the effect that Bay had scratched or bitten Melissa. However, no one present actually saw the dog injure the child. Melissa was then sent home and subsequently taken to a doctor.
As a result of this incident Melissa received a scratch on her face near the right side of her nose which left two small scars about 1.0 cm. in length.[1] It is apparent that she also received a bite on her arm but the record discloses that only teeth marks, in the form of indentations, and bruises were manifested. Karen Losch, Melissa’s mother, testified that the dog bite drew blood but Leonard Losch who came home from work to see the child asserted that he saw no blood on the child’s arm. Additionally, Dr. Martin H. Klein, the immediate treating physician, indicates in his report filed in the record that he did not even treat the bite received on the arm.
The owner’s liability for an animal that causes injury is predicated upon LSA-C.C. Articles 2321, 2315, and 2316. These articles, taken in conjunction, have received uniform interpretation by the courts of this state regarding cases of a nature similar to the present one. Thus, for an owner of a domesticated animal (which is regarded as inherently safe) to be considered at fault and therefore liable for injuries caused by the animal, the animal must manifest a dangerous or vicious temperament, recognizable as such by a reasonable person, so that the owner knew, or through legal consequence should have known, from a prior occurrence or experience, that the animal evinces vicious or dangerous propensities. Voelker v. Liberty Mutual Insurance, 190 So.2d 136 (La.App., 4th Cir., 1966); Cavallino v. Craft Motor Company, 244 So.2d 333 (La.App., 4th Cir., 1971). See Tamburello v. Jaeger, 249 La. 25, 184 So.2d 544 (1966); Talley v. Travelers Insurance Company, 197 So.2d 92 (La.App., 1 Cir. 1967).
Plaintiff attempted to prove Bay’s dangerous propensities by eliciting testimony from the immediate neighbors of Warren Gettys concerning incidents with which the dog Bay was involved. Maria Mouser, a child five years old, testified that she was “scratched” in the face by Bay when *242 she had entered the yard to pet him. No one was present at the time, but there is no reason to doubt the veracity of the child, especially since her parents testified that the child had been scratched and the marks left were indicative of the marks that would be left by a dog’s paw. The occurrence of this incident was estimated to be in the summer of 1968, nearly one and one-half years prior to the incident giving rise to this action. Counsel for plaintiff also stress the fact that Bay was thereafter kept in the kennel, previously built to house the beagle, where before that time Bay had been allowed to run relatively free in the fenced backyard of the Gettys. The record indicates, however, that it was some two to six months after this incident that Bay was put in the kennel. Additionally, both Mr. and Mrs. Gettys testified that the dog was housed in the kennel because Mrs. Gettys did not like the mess Bay was creating in the yard; not because they had any fear that the dog would attack somebody.
We are convinced that the incident concerning Maria Mouser does not indicate any dangerous propensity or predilection that Bay might have. It is indeed difficult for us to believe that a scratch that could have conceivably resulted from a playful gesture by Bay is indicative of any harmful tendencies of the animal.
Virginia Mouser, Maria’s mother, and the parents of Melissa Losch, Karen and Leonard Losch, testified that they had seen Bay growl or snap at children (usually the Getty children) playing with the dog. The number of incidents were estimated at five or six times. Leonard Losch specifically testified that he could recall an incident where the children were riding the dog as a horse and Bay, presumably tiring of the disport, was seen to snap at the children and actually encase his mouth around a child’s hand for a few seconds. We are of the opinion that this testimony, particularly the episode described, is far more indicative of Bay’s gentleness than his dangerousness. Children, especially young children, have a tendency to aggravate a dog to a point beyond the animal’s endurance and, presented with a chance to inflict a wound upon the child’s hand, the dog was seen to refrain. To our mind, a dog with a mean or vicious temperament would not have shown such restraint.
Further, the record contains evidence that the children of the neighborhood frequently (“too numerous to count”) played with the dog in the Gettys’ backyard. This fact indicates that the children of the neighborhood, albeit children of very youthful age, did not consider the dog to have mean, vicious, or dangerous propensities.
Plaintiff asserts that Virginia Mouser and Karen Losch both stated that Mrs. Gettys often said she wanted to get rid of the dog and that her two daughters had been bitten by Bay. However, Mrs. Get-tys, who admitted disliking animals, denied that her children had ever been bitten. Both Mr. and Mrs. Gettys testified that the only time the dog growled or snapped at the children was when they bothered the dog at his mealtime or overtaxed the dog while playing with him. We cannot say that this exhibits dangerous characteristics.
We also note that the plaintiff testified that he occasionally leaned over the Gettys’ fence to pet Bay but he had never been bitten or snapped at. When asked if he thought that Bay was a mean or vicious dog he replied, “No.”
An owner is not liable for injury inflicted by an animal when the owner has no reason to suspect that the animal is vicious or dangerous to other people. Peyronnin v. Riley, 15 La.App. 393, 132 So. 235 (La.App., Orleans, 1931); Blanchard v. Thibodeaux, 44 So.2d 210 (La.App., 1st Cir., 1950).
Additionally, in Rolen v. Maryland Casualty Company, 240 So.2d 42 (La.App., 2d Cir., 1970), writ denied, 256 La. 1149, 241 So.2d 252 (1970), a case strikingly similar to the present one, it was held that the evi *243 dence did not establish that the dog had dangerous propensities. In that case the owner’s son received a wound (that required stitches) from the family dog prior to the time plaintiff in that case was injured.
The statement made by Warren Gettys that he “should have known better than to let Bay out of the gate when the kids were in the yard,” is not necessarily determinative of his liability.
We are convinced that no characteristics sufficient to establish a dangerous propensity by Bay have been shown. We therefore find that Warren Gettys did not have any reason to suspect that the dog was vicious or dangerous around other people. Defendant, as insurer of Getty, is accordingly not liable.
For the foregoing reasons the judgment of the lower court is reversed and plaintiff’s suit is dismissed. Costs to be paid by plaintiff.
Reversed.

. Another doctor on examining the patient diagnosed only one scar in the same area.