184 So.2d 544

**August TAMBURELLO**

**v.**

**Andrew S. JAEGER, Jr.**

No. 47910.

March 28, 1966.

Porteous & Johnson, C. Gordon Johnson, Jr., New Orleans, for defendant.

Hubert, Baldwin & Zibilich, by Leon D. Hubert, Jr., New Orleans, for respondent.

HAMLIN, Justice:

We directed Certiorari to the Court of Appeal, Fourth Circuit, in order that we might review its judgment (176 So.2d 707) which amended and affirmed a judgment of the trial court in favor of plaintiff and against defendant. 248 La. 436, 179 So.2d 275. The Court of Appeal increased to $7,437.35 the trial court's award of $4,000.00 to plaintiff.

This is an action for damages for personal injuries resulting to plaintiff from a kick by defendant's three-month-old filly.

The Court of Appeal correctly stated:

"The undisputed facts may be stated briefly. The defendant owned a number of horses located at his stock farm in New Orleans. Among these were a mare and colt quartered in his stable. The plaintiff, owner of a horse, rented a stall from defendant in which his horse was quartered. On May 28, 1962, plaintiff was there attending his own horse and applied medicine from an aerosol can. Defendant Jaeger asked him to go to the stall in which the mare and colt were quartered and spray some of the medicine on the colt's forehead where it had been slightly injured.

"Plaintiff approached the stall and found the colt and its mother near the open window of the stall. He reached in the window, which was about waist high, and took hold of the colt by the

mane. Its mother backed away and the filly moved back causing plaintiff to lean forward and extend his reach through the window, attempting to hold on to its mane. When he lost his hold on the filly, she turned around suddenly and kicked him in the face, causing serious injury to plaintiff's nose.

"* * *

"The evidence reveals that the filly had once kicked the defendant, when, as he says, he was playing with her, jumping from side to side. This kick was severe enough to cause a bruise which defendant showed to several people, but not the plaintiff. On one other occasion the filly kicked a young lady visiting the corral, apparently without any warning. This kick, fortunately caused no injury, but frightened the young lady who fled from the corral. This incident was communicated to defendant. The testimony does not reveal that plaintiff had knowledge of either of these prior kicking episodes."

Alleging substantially the same facts as found above, plaintiff further alleged in his petition that the accident was caused by defendant's negligence which consisted of: (a) knowingly allowing and/or requesting petitioner to go near the filly with knowledge of its dangerous propensities; (b) knowingly allowing and/or requesting petitioner to go near the filly without giving any warning or indication as to the animal's dangerous propensities; (c) not putting a halter on an animal with dangerous propensities; and (d) not taking the proper precautions to protect petitioner.

Defendant denied plaintiff's allegations of negligence and alternatively pleaded the contributory negligence of plaintiff in the following respects: (a) in cruelly and callously mistreating the filly; (b) in negligently approaching the filly; (c) in failing to take proper precautions to protect himself; and (d) in failing to act as a reasonable and/or prudent person would have acted under the same or similar circumstances.

The trial court found that plaintiff had no knowledge that the filly had previously displayed dangerous propensities to kick. In its opinion, plaintiff did not assume the risk.

The Court of Appeal stated:

"The burden of proving the dangerous propensity of the filly, as evidenced by the two previous kicking episodes, and that such was known to the defendant, is upon the plaintiff. He has discharged this burden. The burden of proving that such behavior of the filly was not evidence of a dangerous propensity, but the normal behavior of a three-month-old filly known to the plaintiff and that the plaintiff was contributorily negligent, is upon the defendant. He has not discharged this burden."

The Court of Appeal noted that *assumption of risk* is factual and stated it would not disturb the finding of the trial court in the absence of manifest error. The Court was not convinced strongly enough to the contrary to justify a reversal of the trial court's finding that the defendant had knowledge of the filly's "vicious" or "dangerous" "propensities." The lack of conviction was based on the absence of expert testimony of the customary behavior of three-month-old colts.

In this Court, defendant-relator urges:

I. "It was error for the Courts below to find that the three-foot-high, three-month-old filly colt in question had 'vicious' or 'dangerous' 'propensities' such as would create liability on a knowing owner, within the meaning of the law."

II. "It was error for the Courts below not to take judicial notice of facts that are within the common knowledge of every person of ordinary understanding and intelligence in the community particularly with reference to the actions of the pony involved."

III. "It was error for the Courts below not to find the plaintiff negligent or *guilty of assumption of the risk of being* injured such as would bar his recovery, particularly in view of the greater responsibility owed by plaintiff who had 'special knowledge' of the natural tendency of ponies to kick."

IV. "It was error for the Court of Appeal to find that the Trial Court had abused its discretion in the assessment of damages."

The question of the liability or responsibility of an owner for the actions of his animal is not new to our jurisprudence or law. Article 2321 of West's LSA–C.C. provides:

"The owner of an animal is answerable for the damage he has caused; but if the animal had been lost, or had strayed more than a day, he may discharge himself from this responsibility, by abandoning him to the person who has sustained the injury; except where the master has turned loose a dangerous or noxious animal, for then he must pay for all the harm done, without being allowed to make the abandonment."

In Delisle v. Bourriague, 105 La. 77, 29 So. 731, 734, 54 L.R.A. 420, we said that Article 2321 is founded upon the presumption that the fault is chargeable to the owner of the animal that caused the damage, or to the person in whose use or under whose care it was at the time of the accident, and that presumption can be made to give way only in the presence of proof either of an unforeseen event or by the imprudence of the one injured.

In Marsalis v. LaSalle, La.App., 94 So. 2d 120, it was very pertinently stated:

"The law applicable to the owning and harboring of domestic animals and the

liability of the owner or harborer thereof is well settled to the effect that when such animal suddenly and without prior warning displays a vicious nature, the owner or harborer is not liable in damages. But if in the past there has been any occurrence which is sufficient to have given notice that the animal is vicious or dangerous, then there is liability in the owner or harborer for such damage as may be caused by the animal. * * *

"In Mercer v. Marston, 3 La.App. 97, we said:

" '* * * it is clear that liability rests on two bases, namely:

" '1. Injury by an animal; and

" '2. Fault or negligence on the part of the owner.' " See, Perez-Sandi v. Berges, 12 La. App. 191, 125 So. 185.

Cases relating to injuries caused by animals are generally divided into types, according to the nature of the animal. The classification depends upon whether the animal is ferae naturae (wild) or mansuetae naturae (domesticated). A horse comes within the classification of domestic animals or animals mansuetae naturae. Durham v. Barnes, La.App., 124 So.2d 792.

"Animals mansuetae naturae are animals which have been domesticated by man for centuries, such as horses, sheep, goats, cows, and dogs; and they have come to be regarded as inherently safe. However, if they should become vicious or have by their previous history manifested a vicious temperament then the owner or harborer thereof retains the animal at his peril." Marsh v. Snyder, La.App., 113 So.2d 5.

In speaking of what constitutes viciousness, it is stated in 3 C.J.S. Animals § 148 c, pp. 1250–1251:

"A vicious propensity is a propensity or tendency of an animal to do any act that might endanger the safety of the persons and property of others in a given situation. Although an animal is actuated solely by mischievousness or playfulness, rather than maliciousness or ferociousness, yet, if it has a tendency to do a dangerous or harmful act, it has a vicious propensity within the meaning of the rule holding the owner or keeper liable for injuries resulting from vicious propensities of which he has knowledge." See, Hartman v. Aschaffenburg, La.App., 12 So.2d 282, 13 So.2d 532; Mungo v. Bennett, 238 S.C. 79, 119 S.E.2d 522, 85 A.L.R.2d 1155.

"On this review of the authorities, it is our opinion that the law makes no distinction between an animal dangerous from viciousness and one merely mischievous or dangerous from playfulness, but puts on the owner of both the duty of restraint when he knows of the

animal's propensities; that he is presumed to know the animal's propensities whether it is dangerous from either cause; * * *" Mercer v. Marston, 3 La.App. 97.

Application of the above jurisprudence and law to the instant facts constrains us to conclude that plaintiff has borne his burden of proof, and that defendant has failed in the proof of his averments.

■ The evidence of record reflects that plaintiff did not know at the time of the accident that the three-month-old filly had previously kicked human beings. Each person or animal is constituted differently as to temperament, breeding, size, strength, and other characteristics. Whether the filly's kicking was playful mischievousness or viciousness, it endangered the safety of others and was therefore a "vicious" or "dangerous" "propensity."

■ The evidence of record is uncontradicted to the effect that defendant had knowledge of two prior episodes of the filly's kicking. He himself was the victim of one attack and received a substantial blow. We find that the defendant was negligent in not warning the plaintiff of the "dangerous propensity" of the filly. Such warning would have alerted the plaintiff to the animal's characteristics and made him anticipatory of its reactions to touch. Defendant has not exculpated himself from

negligence. Kennedy v. Frierson, La.App., 142 So.2d 838; Liner v. McEnery, La.App., 176 So.2d 786.

■ Under the facts and circumstances herein, we find that plaintiff did what a reasonable man would do. He was familiar with the actions of horses, as he himself owned a small race horse which he quartered in one of defendant's stalls. As stated supra, he was not informed of the "dangerous propensity" of the filly. In leaning over the opening of the stall and taking hold of the filly's mane, he did what he thought was prudent; he was attempting to apply medication as had been requested. He certainly did not acquiesce in any danger nor assume any risk; he anticipated no trouble. Under the instant facts, there was no reason for him to anticipate that the filly would abruptly turn around and kick him. Cf. Jack v. Sylvester, La.App., 150 So.2d 789; Dallas v. Crescent Forwarding & Transportation Co., Ltd., La.App., 13 So. 2d 113; Weadock v. Eagle Indemnity Co., La.App., 15 So.2d 132; 7 C.J.S. Assumption, Assumption of risk, p. 137; Mungo v. Bennett, 238 S.C. 79, 119 S.E.2d 522; Hatchell v. Field, 238 S.C. 398, 120 S.E.2d 401. We find plaintiff free of negligence and entitled to recover damages for the personal injuries he suffered.

The Court of Appeal has adequately covered the issue of quantum. We find no error in its conclusions.

For the reasons assigned, the judgment of the Court of Appeal, Fourth Circuit, is affirmed. All costs to be borne by defendant.

FOURNET, C. J., absent.