210 So.2d 93 (1968)
K. O. BAILEY, Individually, etc., et al., Plaintiffs-Appellants,
v.
TRAVELERS INSURANCE COMPANY et al., Defendants-Appellees.
No. 7301.
Court of Appeal of Louisiana, First Circuit.
April 8, 1968.
Rehearing Denied May 27, 1968.
Dennis R. Whalen, Baton Rouge, for appellants.
David W. Robinson, of Watson, Blanche, Wilson, Posner & Thibaut, Baton Rouge, Robert J. Vandaworker, of Taylor, Porter, Brooks, Fuller & Phillips, Baton Rouge, for appellees.
Before LOTTINGER, ELLIS and CUTRER, JJ.
CUTRER, Judge.
This action was initially brought by K. O. Bailey for injuries sustained by his minor daughter, Carolyn, who subsequently married and was substituted as plaintiff on her own behalf. Suit is brought against Abner Kirby owner of the horse which was ridden by Miss Bailey when she was injured, and against Thomas Galloway, father of the minor Charles Galloway who was riding double with plaintiff. Plaintiff prosecutes this appeal from a judgment dismissing her suit.
At the outset it should be noted that the horse involved has never exhibited vicious propensities and that no fault or negligence on the part of the owner has been evidenced. Therefore, we are in accord with the trial judge's ruling that the owner cannot be held liable. See Tamburello v. Jaeger, 249 La. 25, 184 So.2d 544, Talley v. Travelers Insurance Company, La.App., 197 So.2d 92, and cases cited therein.
The question to be resolved is whether the accident was caused by the manner in which Galloway mounted the horse.
The evidence discloses that on February 15, 1964, Rhonda Kirby, the owner of the horse, age fourteen, Charles Galloway, age sixteen, and Carolyn Bailey, age sixteen, *94 went to Long's Riding Stable in Baton Rouge to ride Rhonda's horse which was boarded there. Charles and Rhonda were experienced riders in contrast to Carolyn, who was not experienced in handling horses. The horse was saddled and taken to a muddy pasture by Charles and Carolyn while Rhonda was in the tack room talking to friends.
Carolyn and Charles then proceeded to ride the horse for a few minutes with Carolyn seated in the saddle and Charles riding behind the saddle. Charles suggested that they run the horse. Carolyn, because she was afraid, then refrained from directing the horse and stopped in order that Charles could take command. She accidentally dropped one of the reins. Charles dismounted and Carolyn shifted from the saddle to Charles' position behind the saddle. Galloway then proceeded to mount, placing his left foot in the stirrup and then bringing his right foot across in front of the saddle horn in order to place his right foot in the right stirrup. Charles Galloway testified that while in the process of mounting, his right foot lightly struck the horse in the neck at a point approximately one foot in front of the saddle horn. He further testified:
"Q. Now, as you attempted to get on the horse, just where was your right leg when the horse reared up?
A. Just past the saddle horn, coming down to the right stirrup.
Q. And as you brought your leg over the horse's neck, part of your foot, I assume, touched the horse's neck?
A. I guess so.
Q. And it was right after that that the horse reared up?
A. Oh, no, I got it past that and brought it on down and started bringing it down to the stirrup.
Q. Were you actually sitting in the saddle when the horse reared up?
A. Yes, sir."
It appears that the horse, after rearing, slipped in the mud and fell on plaintiff and Galloway. Other than plaintiff and Galloway, there were no witnesses to the accident.
Cognizance should be taken of several other factors surrounding the accident. The horse was three years old at the time of the accident and, according to the owner, was trained and had a gentle disposition. This testimony was corroborated by Galloway and Carolyn and remains uncontroverted. Rhonda, the owner, testified that on previous occasions she had struck the horse in the neck with a stick and kicked him in the neck with spurs. On none of these occasions did the horse rear.
It is contended by defendants but denied by Miss Bailey that after "scooting" behind the saddle, and positioning herself directly over the horse's flanks that she must have struck him on the flanks, thereby causing him to rear. It is also urged that the mud caused the horse to be nervous and that all the "commotion" on his back caused him to rear.
With respect to the cause-in-fact of the accident, the trial judge concluded:
"It appears from the evidence that Galloway's foot came in contact with the horse's neck as he was undertaking to mount, but with what force and with what effect upon the horse is not shown to the satisfaction of the court. It was Galloway's opinion that this is not what caused the horse to rear up. From the evidence it is impossible for the court to reach any conclusion as to the cause of the accident."
The law places the burden of proof on plaintiff to establish by a preponderance of the evidence the facts upon which she relies for judgment. The term "preponderance of the evidence" means that evidence or that part of the evidence which is of greater weight, which is more convincing and which best accords with reason and probability. A preponderance of the evidence *95 may be said to be that part of the evidence which, because of its apparent correctness, its convincing nature, its quality or its weight, tips the scales in favor of the party upon whom the burden of proof rests.
We are in accord with the conclusions of the trial judge. Plaintiff has failed to prove by a preponderance of the evidence that Galloway's actions caused the accident.
For the above and foregoing reasons the judgment of the trial court is hereby affirmed.
Affirmed.