266 So.2d 526 (1972)
Clavance GRANGER, Plaintiff-Appellee,
v.
UNITED STATES FIDELITY & GUARANTY COMPANY and Farmer's Land and Canal Company, Inc., Defendants-Appellants.
No. 3955.
Court of Appeal of Louisiana, Third Circuit.
September 19, 1972.
*527 Hall, Raggio & Farrar, by Frederick L. Cappel, Lake Charles, for defendants-appellants.
Cormie & Morgan, by Robert E. Morgan, Lake Charles, for plaintiff-appellee.
Plauché, Smith & Hebert, by James R. Nieset, Lake Charles, for intervenor-appellee.
Before SAVOY, HOOD and CULPEPPER, JJ.
HOOD, Judge.
This is a suit to recover damages for personal injuries sustained by plaintiff, Clavance Granger, when he was gored by a bull. The defendants are Farmer's Land and Canal Company, owner of the bull, and its insurer, United States Fidelity & Guaranty Company. Southern Farm Bureau *528 Casualty Insurance Company, the workmen's compensation insurer of plaintiff's employer, intervened seeking reimbursement of the compensation benefits which it had paid, or may become obligated to pay, to plaintiff.
The case was tried by jury, with the result that a special verdict was rendered finding Farmer's Land and Canal Company to be negligent, finding plaintiff to be free from contributory negligence, and fixing the amount of damages sustained by plaintiff at the sum of $65,000.00. Judgment was rendered by the trial court in favor of plaintiff and against defendants, in accordance with that verdict. Judgment also was rendered granting intervenor the relief which it sought. Defendants have appealed.
The issues are whether the employees of Farmer's Land and Canal Company were negligent in handling the bull and in failing to warn plaintiff, whether plaintiff is barred from recovery by contributory negligence, and whether the amount of the award is excessive.
The accident occurred on September 9, 1970, in the immediate vicinity of a rice drier owned by Farmer's Land and Canal Company, in Calcasieu Parish. Plaintiff, who was 63 years of age, had been hired by Fred Doucet, a local farmer, to deliver rice to defendant's rice drier. The drier was located about 400 yards north of a public gravel road, in a large field in which defendant's also conducted some cattle raising operations.
While making his first delivery to the drier, plaintiff noticed several cowboys driving a herd of cattle from one pasture to another in the area where the drier was located. Upon approaching the drier with his second delivery later that day, he noticed a Santa Gertrudes bull standing in a ditch near the road, approximately 400 yards from the drier.
He proceeded to drive to the drier where he found one truck being unloaded and another waiting to be unloaded. He parked behind the second truck, got out, and sat on the running board of his truck, on the east or shady side of it. The drivers of the other trucks also were either in their vehicles or were near them. Shortly after plaintiff had parked, another truck hauling rice pulled up and parked behind him.
About 15 or 20 minutes after plaintiff had stopped at the drier, and while he was waiting for his turn to unload, he heard a noise which sounded like "whips popping," and he got up from his position on the east side of his truck to investigate. He walked a few steps toward the rear of his truck, and then saw the same bull which he had observed earlier, about 10 or 12 feet from him, trotting directly toward him. In an effort to avoid being struck by the animal, plaintiff attempted to dive under his truck. He was not quick enough, however, and the bull rammed him viciously against the body of the truck.
The evidence shows that while the cowboys, all of whom were employed by Farmer's Land and Canal Company, were moving 30 or 40 head of cattle from one field to another, this bull separated from the rest of the herd. The cowboys completed moving the other cattle, and then three of them went back to get the bull. One of the three who went back for that purpose, Charles Celestine, testified that he was standing at a gate some distance from the drier, holding the gate open, while the other two on horseback, began driving the bull. The animal began trotting toward the parked trucks, although the cowboys were attempting to drive him in another direction. The evidence shows that the two men on horseback were about 100 yards behind the bull when the accident occurred. Celestine stated that neither he nor any of his fellow employees had whips or prods of any kind, and thus no whips were popped. He testified, however, that he heard someone give a warning, but he does not know who it was. He conceded that usually they use ropes to control a bull under those circumstances, but that no ropes were used in this instance. He and *529 his companions knew that the drivers were in or around the trucks which were stationed in the path of the bull.
Lernis Babineaux, the driver of the truck which was parked in front of plaintiff's vehicle, testified that he did not hear whips being popped or any other warnings given, and that he did not see or hear the bull before the accident occurred. He stated that the drier made a lot of noise and that that may account for the fact that the truck drivers did not hear the bull or the cowboys approaching.
Defendants admit that the cowboys were employed by Farmer's Land and Canal Company, and that they were acting within the course and scope of their employment. They also admit that plaintiff was a business invitee of that company at the time his injury was sustained.
The duty of an occupier of premises to an invitee is to exercise reasonable or ordinary care for his safety commensurate with the particular circumstances involved. The occupier, however, does not insure an invitee against the possibility of accident. The invitee assumes all normally observable or ordinary risks incidental to the use of the premises. The occupier is not liable for an injury to an invitee resulting from a danger which is observable, or which should have been observed by the invitee in the exercise of reasonable care, or from a danger which the invitee should reasonably have appreciated before exposing himself to it. Foggin v. General Casualty Insurance Company, 250 La. 347, 195 So.2d 636 (1967); and Levert v. Travelers Indemnity Company, 140 So.2d 811 (La. App. 3 Cir. 1962).
Article 2321 of the Louisiana Civil Code provides that "The owner of an animal is answerable for the damage he has caused ..." Although his article seems to subject the owner of an animal to absolute liability for any damage caused by it regardless of fault, our courts have construed that provision with Articles 2315 and 2316 of the Civil Code, and insofar as domesticated animals are concerned they have uniformly required a showing of knowledge of the animal's dangerous propensities before assessing fault against the owner. Rolen v. Maryland Casualty Company, 240 So.2d 42 (La.App. 2 Cir. 1970).
Cases relating to injuries caused by animals are generally divided into two categories, according to the nature of the animals. One category includes wild or undomesticated animals, such as lions, tigers, wolves, etc. These animals are considered to be inherently dangerous, and the owner of such an animal is usually held to be absolutely liable for all injuries caused by it. The second category embraces animals which have been domesticated, such as horses, cattle, sheep, dogs, etc. These animals generally are regarded as being inherently safe. However, if such an animal has manifested a vicious temperament, or if the owner knows or has reason to know of a dangerous propensity in the animal, then the owner or harborer retains the animal at his peril. Marsh v. Snyder, 113 So.2d 5 (La.App.Orl.1959); and Tamburello v. Jaeger, 249 La. 25, 184 So.2d 544 (1966).
A showing that a domesticated animal has caused injury justifies a presumption that the owner was negligent. This presumption of fault can be rebutted, but in order to successfully do so the owner must show that he is free from even the slightest degree of negligence, and that he did all that was reasonably possible to prevent the injury. Fall v. Manuel, 228 So.2d 494 (La.App. 3 Cir. 1969); and Liner v. McEnery, 176 So.2d 786 (La.App. 2 Cir. 1965).
Negligence usually is established in such cases by showing that the owner knew or had reason to know that the offending animal had a dangerous propensity which caused the accident, that is, that the animal had a tendency to behave in such a manner as to endanger the safety of persons *530 or property under the existing circumstances, and that the owner failed to take reasonable precautions to prevent such injury or damage. Cavallino v. Craft Motor Company, 244 So.2d 333 (La.App. 4 Cir. 1971); Tamburello v. Jaeger, supra, Prosser, Law of Torts, Chapter 14, Sec. 75, pages 514-515. Although negligence is normally based on the owner's knowledge of the peculiarities of a specific domestic animal, the owner also is bound to take notice of the general propensities of the class of animal to which it belongs, as well as of the propensities of that particular animal, and of the generally known or likely behavior of animals of that class which might cause injury. He must take reasonable care to prevent injuries which are reasonably to be anticipated from such an animal. Pennyan v. Alexander, 229 Miss. 704, 91 So.2d 728 (1957); and Yazoo & M.V.R. Company v. Gordon, 184 Miss. 885, 186 So. 631 (1939).
In the instant suit the record does not show that defendant's bull, a domesticated animal, had ever exhibited any dangerous propensities peculiar to himself. Neither does the evidence show that this particular bull had behaved, or could be expected to behave, in a manner different from any other animal of that class. Bulls, however, as a class, have a notorious reputation for irascible behavior when they are disturbed or provoked. Defendant's employees obviously were aware of this fact, since one of them testified that normally they used ropes to control bulls under circumstances such as existed here.
We think the herding of the bull was sufficient to disturb the animal so as to generate the general propensity of animals of that class for violence and injury. The failure of defendant's employees to use ropes or other restraints upon the animal, or to give a prior adequate warning to plaintiff and to the drivers of the other trucks in the path of the bull, was a breach of the defendant's duty of due care owed to plaintiff. We conclude that the employees of defendant, Farmer's Land and Canal Company, were negligent in failing to restrain the bull or in failing to adequately warn plaintiff, and that their negligence in that respect was the proximate cause of the accident.
We find that plaintiff is not barred from recovery by contributory negligence. The record shows that he did not know, and had no reason to know, that the bull was running or was being herded in his direction. We do not feel that he was negligent in walking toward the back of his truck to investigate the noise which he stated that he heard, and we think he exercised reasonable care in attempting to avoid injury as soon as he discovered the bull approaching him.
Plaintiff sustained serious injuries as a result of this accident.
Dr. F. W. Bennerscheidt, a general surgeon, was plaintiff's treating physician. He saw plaintiff on the day of the accident, and diagnosed his injuries as fractures of the 6th, 7th, 8th and 9th ribs, multiple fractures of the pelvis, a punctured lung, and a possible ruptured spleen. Plaintiff was in a state of shock. After 13 days in the hospital, plaintiff's spleen ruptured, and he went into deep and profound shock because of bleeding in the abdominal cavity.
Soon after the ruptured spleen was corrected by surgery, plaintiff developed a pulmonary embolism in his lungs, which is fatal in 25 to 40 percent of the cases involving that condition. In those cases the patient experiences a smothering sensation and feels as though he is dying. Plaintiff recovered but he was in critical condition for 17 to 18 days following his spleen operation.
Granger was discharged from the hospital on October 23, 1970, six weeks after he *531 had entered it. At that time he was just beginning to walk again, and the unstable condition of his pelvis, which had caused him frequent and severe pain upon any movement while in bed, made these initial attempts at walking very painful. Dr. Bennerscheidt stated that "the pelvic fracture is going to stay with him, and the problems relative to this will stay with him." He feels that plaintiff will require "long range follow-up" medical attention.
Dr. George P. Schneider, an orthopaedic surgeon, examined plaintiff on December 14, 1970, and has been treating him since that time. He testified that plaintiff's pelvic fracture has left him with a permanent disability which disables him from performing heavy manual labor. Dr. Schneider feels that plaintiff will continue to walk with a limp and will experience pain in the pelvic area for an indefinite period of time.
Dr. Norman P. Morin, an orthopaedic surgeon, examined plaintiff on July 19, 1971, and concluded that he has a 10 percent partial permanent disability of the body as a whole.
Plaintiff's medical expenses, amounting to $6,809.50, were paid by intervenor, Southern Farm Bureau. That intervenor also paid compensation benefits to plaintiff in the sum of $2,504.00. The trial judge thus awarded intervenor the sum of $9,313.50, to be paid out of the award made to plaintiff.
After considering the nature of the injuries sustained by plaintiff and the permanent disability which he has as a result of that injury, we have concluded that the award made by the jury in this case was within the realm of its discretion. We thus will affirm the award.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to defendants-appellants.
Affirmed.