312 So.2d 139 (1975)
Alton W. ALEXANDER
v.
ST. PAUL FIRE AND MARINE INSURANCE COMPANY et al.
HANOVER INSURANCE COMPANY et al.
v.
Lee SISTRUNK d/b/a Mid Parish Roofing Company et al.
Nos. 10176, 10177.
Court of Appeal of Louisiana, First Circuit.
March 10, 1975.
Rehearings Denied May 20, 1975.
Writ Refused June 23, 1975.
*140 Lonnie Myles and Jesse P. Lagarde, Amite, for appellants.
Tom H. Matheny, Hammond, for appellees.
Before LANDRY, BLANCHE and YELVERTON, JJ.
LANDRY, Judge.
Defendant, liability insurer of Lee Sistrunk, d/b/a Mid Parish Roofing Company (Sistrunk), St. Paul Fire and Marine Insurance Company (St. Paul), appeals judgments awarding plaintiff, Alton W. Alexander (Alexander), damages for personal injuries sustained in a fall from a ladder erected by Sistrunk at a construction site and awarding plaintiff, Hanover Insurance Company (Hanover), judgment in subrogation for workmen's compensation benefits paid Alexander, as compensation insurer of Alexander's employer, Ragusa Brothers, *141 Inc. (Ragusa), a building contractor. The trial court rendered judgment in favor of plaintiffs upon finding the doctrine of res ipsa loquitur applicable. We reverse and render judgment for defendants in each case.
The accident occurred June 17, 1970. Alexander is a carpenter who had been employed by Ragusa for approximately 17 years prior to the accident. For the last two and one-half years of his employment, Alexander was a working foreman earning $4.50 hourly. The accident occurred while Alexander was working on the roof of the Hammond State School near Hammond, in Tangipahoa Parish, Louisiana. Ragusa had a contract to install air conditioning units in the school. The work required that holes be cut in the roof. Alexander and one helper, Anthony C. LaMarca, were assigned by Ragusa to perform the carpenter work necessary to cut and frame the holes. Ragusa sub-contracted to Sistrunk the task of repairing and waterproofing the roof after Ragusa made the required openings.
On the day in question, Sistrunk and his crew, consisting of Jesse W. Sibley, Howard Gorsuch and Charles Miller, reported to the job site at approximately 7:30 A.M. The roof deck of the school building was approximately 13 feet above the ground. Sistrunk's equipment included, inter alia, an aluminum extension ladder. The ladder was extended its maximum length and placed against the building to provide access to the roof. During the workday which followed, the ladder was used jointly by Sistrunk's crew, plaintiff Alexander and his helper, LaMarca.
Alexander marked the locations of the several holes to be cut in the roof. Sistrunk and his crew cleared the marked areas of the then existing roofing materials, following which Alexander and LaMarca cut holes in the roof decking. After the holes were cut and framed, Sistrunk and his crew then reapplied paper and tar around the framed areas to make the roof waterproof. The reroofing process required the use of melted tar which was provided by a "tar pot" situated on the ground and manned by Miller, who served as the ground man of Sistrunk's crew. At some time during the day, a pulley was attached to the underside of the ladder (between the ladder and building) by affixing it to a rung of the ladder above the roof. The device was used to raise buckets of hot tar up to the workmen. To hoist a bucket of tar, a workman on the roof held the ladder away from the building with one hand while taking hold of the bucket with the other hand and bringing the bucket up between the building and the ladder over the eave and onto the roof. The ladder in question was 17 feet, 3 inches, in length when fully extended. There is some dispute concerning the height of the ladder above the roof when the ladder was adjusted to its maximum length. Alexander and LaMarca testified the ladder extended from four to six feet above the roof deck. Sistrunk and his crew testified that it extended between three and four feet above the roof. The record conclusively establishes that the ladder could not extend more than 3½ to 4 feet above the roof deck when positioned at a safe climbing angle. During the day, the ladder was used by all workmen. At approximately 4:15 P.M., as Alexander was descending the ladder, after completing the work of framing and covering the holes, he fell to the ground and sustained serious injury to his left ankle.
Subject ladder is composed of two 9 foot sections, extendable to the maximum length noted. The ladder rungs are made of aluminum tubing welded into aluminum channel rails. The ladder is extended by adjusting the upper section to rungs of the lower section by means of two jaw-like hooks installed inside and parallel to the railings of the extension section. The upper or load bearing part of each "jaw" fits over and closes around a ladder rung of the lower section to maintain the ladder at a desired length. The lower part of *142 the "jaw" or hook closes the "jaw" by pivoting on a pin inserted through the load bearing arm of the "jaw". The lower portion of the "jaw" is counterbalanced and/or spring loaded to maintain the hook in a closed position to prevent the load bearing hook from engaging a rung when the ladder is lowered in height. To shorten the ladder one or more rungs, but not to its minimum length, the hook must be manually opened by applying upward pressure to the outer underside edge of the lower "jaw" part. This causes the opposite or inside edge of the lower part to pivot and drop or open, thereby exposing the open "hook" and permitting the "hook" to engage the desired rung. To increase height, the extension portion is simply pushed upward to the desired rung. The hooks are so contrived that pushing upward causes the hook to engage each successive rung, without locking, so long as upward pressure is applied. When the desired rung is reached, the extension is made fast by exerting a slight downward pressure which causes the under part of the "jaw" to close and lock the ladder securely in place. As noted, to keep the hook open when the ladder is being lowered, pressure must be applied to the outer under edge of the lower jaw part, otherwise the "jaw" closes and prevents the hook from engaging any rung as the extension is lowered. In short, this provides a convenient means of completely reducing the ladder to its shortest length. Theoretically, at least, the latching device is so constructed that when it is properly operating, the extension cannot engage a rung while being lowered unless manual pressure is applied to the lower part of the device as above mentioned.
On the day in question, the ladder was installed before work began in the morning. The evidence preponderates to the effect that it was fully extended, and some time during the day, when the use of tar became necessary, the pulley was attached to the second rung from the top by one of Sistrunk's crew. Although the precise time of its removal is not made clear, it is certain that the pulley was removed in the afternoon by one of Sistrunk's men after it was no longer needed to hoist tar to the roof. During the day, the ladder was used repeatedly by plaintiff, Alexander, and LaMarca.
At the end of the day's work, Sistrunk's crew consisting of himself, Howard Gorsuch, Jesse W. Sibley and Charles Miller, all descended the roof before Alexander and LaMarca. Neither Sistrunk nor his men recalled who removed the pulley from the ladder. Those who testified, namely, Sistrunk, Gorsuch and Sibley, stated the pulley had been removed before they descended for the last time. Sistrunk and Gorsuch were the last of the Sistrunk crew to return to the ground. There is some divergence of view concerning whether Sistrunk or Gorsuch was last to come down. It is undisputed that Alexander and LaMarca were alone on the roof when Alexander fell.
Sistrunk testified he made an uneventful descent shortly before Alexander fell. He walked to his nearby truck, heard a noise from the direction of the ladder, turned and saw the ladder slip to the left, and saw plaintiff fall to the right. He also stated the ladder did not fall to the ground.
Gorsuch testified that when he descended, he went toward Sistrunk's truck to ask Sistrunk about the next day's work. He stated that as he proceeded towards Sistrunk's vehicle, he heard the ladder "make a kind of squeaking noise". He turned and saw plaintiff falling to the ground. He did not recall seeing the ladder. He rushed to plaintiff's aid. He saw LaMarca come down the ladder after Alexander fell. Gorsuch also stated that the accident happened about five minutes after he descended the ladder. He did not recall whether the pulley was still on the ladder when he used it for the last time.
Jesse W. Sibley testified he came down before Alexander, but did not see the accident. He saw plaintiff on the ground after *143 the fall. He did not know whether or not the ladder fell to the ground in the accident.
Plaintiff, Alexander, testified that to the best of his knowledge, the pulley was removed from the ladder before the accident. He believed the ladder had been lowered from a height of four to six feet above the roof to only one or two feet over the roof deck. When he approached the ladder, he grasped the side rail with his left hand and swung his right foot over without looking or without testing the ladder. He swung his foot around to contract the ladder, and saw LaMarca standing about two or three feet away. As his foot contacted the ladder, it slipped a rung; the ladder went out from under him, and he fell to the ground.
Anthony LaMarca, Alexander's assistant, testified that he was two or three feet behind Alexander when the accident occurred. Like Alexander, he believed the ladder had been lowered, but could not say how much. He stated he saw plaintiff place his foot on the rung just below the roof line. He also testified that when plaintiff's foot contacted the rung, the ladder slipped a rung, about a foot or so, and plaintiff fell. LaMarca did not think the ladder fell to the ground because he came down the ladder behind plaintiff.
Alexander and Hanover rely upon Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621, and Haymark & Sons v. Predergast, La.App., 268 So.2d 110, in support of the contention that the trial court properly applied the doctrine of res ipsa loquitur in this instance.
It is well established that the doctrine of res ipsa loquitur is a rule of evidence whose applicability is determined at the end of a trial. The rule applies when the facts suggest the negligence of defendant to be the most plausible cause of the accident. King v. King, 253 La. 270, 217 So.2d 395.
It is also well established that for the doctrine of res ipsa loquitur to apply, it must be shown: (1) The circumstances are such as to create an inference of negligence on defendant's part; (2) control and management of the instrumentality causing the damage was in the exclusive control of defendant, and (3) plaintiff was not in a position to know the particular circumstances which caused the instrumentality to operate to plaintiff's injury, whereas, the facts were such that defendant is presumed to possess superior knowledge in this regard. Dorman v. T. Smith & Son, 223 La. 29, 64 So.2d 833; Murphy Corporation v. Petrochem Maintenance, Inc., et al., La. App., 180 So.2d 716.
Boudreaux, above, has recently reiterated the rule that applicability of the principle of res ipsa loquitur does not dispense with the requirement that plaintiff prove negligence. Rather it is simply a step in the process of proof, permitting plaintiff, in a proper case, to invoke the inference of negligence which flows from the rule's application; which inference is weighed, along with all the other proof, in determining whether or not plaintiff has met the required burden of proof. Boudreaux, above, has further crystalized the rule by expressly holding that the real test of applicability is whether the facts of the case suggest that the negligence of defendant, rather than some other fact or factors, is the most plausible explanation of the accident. If so, res ipsa loquitur is applicable. If the facts show that some cause other than defendant's negligence was the most plausible cause of the accident, the doctrine of res ipsa loquitur is not applicable.
We find the doctrine of res ipsa loquitur inapplicable in this instance. While the use of a ladder may involve personal risk, a ladder is not per se a dangerous instrumentality. Although the ladder belonged to Sistrunk, it was not under Sistrunk's exclusive control. All workmen on the job had access to the ladder; it was not under the exclusive control of any particular party. All had equal opportunity for inspection. The absence of the element *144 of exclusive control precludes application of the doctrine. We also find, in accordance with Boudreaux, above, that the facts of this case do not suggest that the negligence of Sistrunk, or some member of his crew, was the most plausible cause of the accident, and for this additional reason, the doctrine of res ipsa loquitur is not applicable herein.
Since the factual situation here present does not warrant application of the doctrine of res ipsa loquitur, plaintiff may not rely upon the doctrine's inference that the defendant's negligence caused plaintiff's injury. Rather, plaintiff must prove that defendant was in fact negligent, and that said negligence breached a duty owed to plaintiff.
The thrust of plaintiffs' cases is that when the pulley was removed from the ladder by Sistrunk or one of his men, near the end of the day, the ladder was lowered, and in the process the hooks were not securely latched to the rung on which they rested. On this premise, it is contended that when Alexander stepped upon the lowered ladder, it slipped a rung causing him to lose his footing and fall to the ground. The alleged failure to properly secure the hooks is urged as negligence constituting the sole proximate cause of Alexander's injury.
It is basic law that plaintiff must prove his case by a preponderance of evidence. Campbell v. Diamond M Drilling Co., Inc., La.App., 274 So.2d 842. Preponderance of evidence means evidence which is of greater weight or which is more convincing than evidence offered in opposition thereto, and which, because it best accords with reason and probability, or which because of its more convincing nature and quality, best tips the scales of justice in favor of the party upon whom the burden rests. Bailey v. Travelers Insurance Company, La.App., 210 So.2d 93.
Negligence must be established with reasonable certainty. Evidence which shows the mere possibility or probability of negligence will not suffice to support a claim in tort. Mayes v. McKeithen, La. App., 213 So.2d 340.
Applying the foregoing rules, we find that plaintiff, Alexander, has failed to establish negligence on defendant's part with that degree of certainty required by law.
The ladder was used throughout the day by numerous employees, including Alexander, without incident. Although it is clear the pulley was removed from the ladder before the accident occurred, it is not shown with reasonable certainty that the ladder was lowered when the pulley was taken down. Sistrunk and his crew testified the ladder was not lowered to their knowledge. However, both Alexander and LaMarca testified the ladder had been lowered to about one foot above the roof. In prior statements, Alexander had given conflicting versions concerning the height of the ladder and his manner of descent. On June 30, 1970, thirteen days after the accident, Alexander gave a statement to John Love of Hanover, in which Alexander recited the ladder was about 6 inches above the roof, and that he, Alexander, grasped the ladder with his right hand and placed his left foot on the ladder. On cross-examination, Alexander testified he was mistaken about this prior statement. Ben Hamilton of St. Paul took a statement from Alexander on August 4, 1970. In this instance, Alexander stated the ladder was about 8 inches above the roof line.
Assuming, solely for argument's sake, that the ladder was lowered when the pulley was removed, the evidence does not show precisely when this happened. However, it is clear beyond doubt that after the pulley was removed, at least two persons, Sistrunk and Gorsuch, and possibly Sibley also, descended the ladder without incident before Alexander fell. The record is clear beyond doubt that the condition of the ladder was unchanged between the time Sistrunk and Gorsuch last used it and the *145 time that Alexander fell. It seems strange indeed, and plaintiffs offered no explanation why the ladder did not slip with either Sistrunk or Gorsuch if it was not properly latched as plaintiff contends.
Moreover, our appreciation of the operation of the latching device leads to the conclusion that it is most improbable that the ladder could slip downward one rung. It will be recalled that the latching device is designed to prevent the ladder from engaging a rung while being lowered unless the device is manually held open. While it is in the realm of possibility that such a device could malfunction, the evidence militates against such a conclusion in this instance because Sistrunk inspected the ladder after the accident and found it in perfect working order.
Plaintiffs rely almost exclusively upon the testimony of LaMarca to the effect that he was behind plaintiff and saw the ladder slip down one rung. We recall that plaintiff admittedly stepped on a rung below the roof line, and that LaMarca was standing two to three feet behind plaintiff. Under these circumstances, we entertain considerable doubt concerning LaMarca's view of the precise spot where plaintiff placed his foot. We further note Alexander's testimony that he did not look at the rung on which he placed his foot, but that he merely swung his foot around after grasping the ladder with his hand. We find it just as plausible that Alexander's foot slipped or that he somehow kicked the ladder and caused it to slide along the edge of the roof.
We are aware that the findings of a trial court on factual issues are entitled to great weight and should not be disturbed in the absence of manifest error. Guillory, et al. v. Johnson, et al., La.App., 238 So.2d 276.
We are also aware that finding of facts based on conflicting testimony of witnesses, particularly findings based on credibility, are not to be disturbed on appeal unless found to be clearly in error. Miller v. Central Mutual Insurance Company, La.App., 174 So.2d 280. In this same connection, we acknowledge that testimony of an apparently disinterested witness, if credible, is entitled to great weight. Thrash v. Continental Casualty Company, La.App., 6 So.2d 75.
On authority of Prattini v. Bennett, La.App., 281 So.2d 187, plaintiffs suggest that La.Const. Art. 7, Section 29, does not obligate appellate courts of this state to review facts on appeal. We seriously question the correctness of this position. In any event, appellants herein have expressly placed the facts in issue on this appeal. Under these circumstances, at least, we deem it obligatory that we review the facts.
We are of the view that a judgment which is not supported by a clear preponderance of evidence which establishes defendant's negligence to a reasonable certainty in a tort case is manifestly erroneous.
We are of the further view that to predicate recovery upon the testimony of a single witness, which contradicts that of other witnesses who appear equally as credible, the testimony of the witness must appear logical and plausible in the light of the total circumstances of the case. We find nothing in this record which logically or plausibly supports LaMarca's testimony that the ladder slipped a rung.
The judgment of the trial court is reversed and judgment rendered herein in favor of defendants, Lee Sistrunk, d/b/a Mid Parish Roofing Company, and St. Paul Fire and Marine Insurance Company, rejecting and dismissing the claims of plaintiffs, Alton W. Alexander and Hanover Insurance Company, with prejudice; all costs of these proceedings to be paid by said plaintiffs.
Reversed and rendered.