360 So.2d 894 (1978)
Nathan WALKER, Jr., et ux., Plaintiffs-Appellees,
v.
UNION OIL MILL, INC., et al., Defendants-Appellants.
No. 6463.
Court of Appeal of Louisiana, Third Circuit.
May 24, 1978.
Rehearing Denied August 4, 1978.
Theus, Grisham, Davis, Leigh & Brown by R. L. Davis, Jr., Monroe, for defendants-appellants.
Dale, Richardson & Dale by R. R. Reeves, Jr., Harrisonburg, for plaintiffs-appellees.
*895 Before WATSON, GUIDRY and CUTRER, JJ.
GUIDRY, Judge.
On December 18, 1958, Nathaniel Stevenson, then fifteen years of age, died of suffocation when he apparently became trapped in a storage tank owned by Union Oil Mill, Inc. and operated by Victor Cross d/b/a United Elevator Company. Nathan Walker, Jr. and Martha Walker, the decedent's parents, originally brought this wrongful death and survival action against Victor Cross, Union Oil Mill, Inc. and its liability insurer, Employer's Liability Assurance Corporation Ltd. The case was tried on its merits on June 17, 1960 and was then taken under advisement by the trial court.
Martha Walker died on September 1, 1962. On June 16, 1965, plaintiffs obtained an order substituting the children of Martha Walker as parties plaintiff. That same day, all plaintiffs filed a motion for summary judgment. On June 24, 1965, defendants filed a Dilatory Exception of Unauthorized Use of Summary Proceedings along with Peremptory Exceptions of No Cause or Right of Action and Prescription. This matter was then set for trial on three successive dates, to-wit: November 4, 1968, February 21, 1969 and September 26, 1969.
The record reflects no further activity until September 22, 1977, when the trial court rendered judgment:
(1) In favor of Nathan Walker, Jr., against all defendants, in solido, in the amount of $1,000.00;
(2) In favor of James Henry Lewis, Marjorie Marie Lewis, Hattie Louise Walker, Yvonne Phillip Johnson and Jessie Mae Felton as heirs and substituted parties plaintiff for Martha Walker against all defendants, in solido, in the amount of $25,000.00.
Both plaintiffs and defendants have perfected appeals from the judgment of the trial court. Plaintiffs' appeal and answer to defendants' appeal, requests an increase in the quantum awarded.
Defendants' primary contentions on appeal are:
(1) Plaintiffs' cause of action should be considered abandoned under the provisions of LSA-C.C.P. art. 561 inasmuch as more than five years elapsed without any steps being taken in the prosecution or defense of this case in the trial court;
(2) The claim of Martha Walker should be dismissed for failure to substitute parties plaintiff within one year from her death; and
(3) The trial court erred in finding negligence on the part of defendants and invoking the doctrine of res ipsa loquitur.
We pretermit a discussion of the procedural issues raised by defendants as we conclude that a consideration of the merits of this case warrants a reversal of the trial court's judgment.
The record establishes the following facts:
The tank in which young Nathaniel lost his life is part of a large grain elevator facility which is used for the storage and processing of soybeans and grain in Ferriday, Louisiana. This facility consists of five cylindrical tanks along with several structures and other supporting equipment. Four of these tanks are situated in a line adjacent to a road and are used mostly for the storage of soybeans. A cross conveyor apparatus traverses the tops of these tanks. A ladder affixed to the exterior of one of the tanks allows a person to reach the top of any of the four tanks.
Tank number 1 in which Nathaniel met his death, measures 19 feet in diameter with a height of 40 feet, 4 inches. Access to the interior of this tank was provided by means of a manhole located in the top of the tank measuring 1 foot, 7 inches in diameter, and also by a small door located in the side of the tank approximately 12 feet above the ground. This side door opens inward, and thus can be opened only when the level of the beans in the tank falls below the level of the door. Otherwise, pressure from the inside makes this door impossible to open. However, entrance by way of the top manhole can be made at any time, regardless of the level of the beans in the tank. A wooden ladder extends from the manhole down into the tank, allowing a *896 person to descend until he is standing on top of the beans. There are no locks to prevent unauthorized persons from entering the tank through either the side or top entrance. There are no warning signs present.
Part of the storage process requires a continuing transfer of the beans from one storage tank to another. This is accomplished by allowing the beans to drain out of the tank by means of gravity flow through a six inch line where they are then conveyed elsewhere. However, when the level of the beans drops to a certain point, gravity is no longer sufficient and the beans will cease flowing on their own. A motor is then used to turn a screw in the center of the tank which pulls the remaining beans out. While being emptied, it is necessary for someone to stand by outside of the tank to clear the line should it become clogged with foreign matter.
There is no danger to a person entering the tank while it contains beans, if the beans are not moving, i. e., if they are not being drained out of the tank. But it is dangerous to enter the tank if the beans are being transferred as they have a tendency to cave in.
After the level of the beans drops below the side door, it often becomes necessary for someone to enter the tank to rake or knock some of the remaining beans loose with sticks. However, this is only done when the bean level is near the bottom of the tank.
Nathaniel's older brother, James Henry Lewis, was employed at the grain elevator. The record shows that Nathaniel hung around the grain elevator and sometimes assisted his brother with some of the clean-up work. At trial, Mr. Cross denied that Nathaniel was an employee or that he had ever observed him in the tanks. There is some evidence to the effect that Mr. Cross had on occasion instructed James Henry Lewis to give Nathaniel some money out of his paycheck. This was denied by Mr. Cross, who further testified that Nathaniel had been advised to leave the premises quite often. Nathaniel had been in the tanks with his brother when the latter's duties required him to enter them to rake out the remaining beans when they reached a low level. James Henry Lewis testified that Nathaniel was familiar with the premises and knew how the entire operation worked.
The record indicates that on the morning of December 18, 1958, tank number 1 was approximately ¾ full. The beans were being transferred out of the tank by means of the gravity flow process described above. James Henry Lewis was on duty that morning. He testified that Nathaniel was there that morning to assist him with some cleaning under the scales.
Victor Cross' brother, Howard, sometimes assisted in the operation of the grain elevator. He testified that he stopped by soon after 9:00 A.M. He advised Nathaniel to go home and then left the premises.
Nathaniel left sometime before noon. After a break for lunch, both James Henry Lewis and Nathaniel returned to the grain elevator at about 1:00 P.M. James Henry Lewis testified that he left the premises at about 2:00 P.M. to visit with a cousin. When he left, Nathaniel was around the base of the tanks. When he returned about fifteen or twenty minutes later, he was no longer there. He did not search for Nathaniel, as he thought he had gone home. The next day, Nathaniel's body was recovered from the tank. At that time, the tank was approximately ½ full.
The trial judge did not render written or oral reasons for judgment therefore, we do not know on what basis he concluded that defendants were negligent and responsible in tort damages to plaintiffs.
Plaintiffs on appeal take the position that a bean storage tank, while in the process of being mechanically emptied, is a dangerous instrumentality. Plaintiffs thus allege that defendants failed to exercise reasonable care in leaving a fifteen year old minor alone and in charge of managing such dangerous machinery. In support of their contentions, plaintiffs place much emphasis on the doctrine of res ipsa loquitur and on the rule of law that where there are no eyewitnesses to an accident, it is presumed that the decedent acted with ordinary care for *897 his own safety. Stansbury v. Mayor and Councilmen of Morgan City, 228 La. 880, 84 So.2d 445 (1955); Le Jeune v. State, Department of Highways, 215 So.2d 150 (La.App. 3rd Cir. 1968, writ refused). Alternatively, plaintiffs rely on the doctrine of attractive nuisance.
Defendants, on the other hand, contend that plaintiffs have failed to demonstrate any negligence on their part, and that the doctrines of res ipsa loquitur and attractive nuisance are inapplicable to the case at bar. We agree.
The mere fact that a person is injured on the property of another does not give rise to a presumption of negligence on the part of the defendant. Rousseau v. Deramus, 342 So.2d 276 (La.App. 3rd Cir. 1977). In a tort action, plaintiff has the burden to prove that, more probably than not, his injury was caused by the negligence of defendant. Boudreaux v. American Insurance Company, 262 La. 761, 264 So.2d 621 (1972).
Res ipsa loquitur is a rule of evidence which under certain circumstances may assist plaintiff in carrying his burden of proof. It does not dispense with the necessity that plaintiff prove negligence on the part of the defendant. Boudreaux v. American Insurance Company, supra; Alexander v. St. Paul Fire & Marine Insurance Company, 312 So.2d 139 (La.App. 1st Cir. 1975, writ refused); Aetna Casualty & Surety Co. v. Rothman, 331 So.2d 81 (La.App. 1st Cir. 1976).
Three prerequisites for the application of the doctrine of res ipsa loquitur are set forth in Alexander v. St. Paul Fire & Marine Insurance Company, supra, as follows:
"It is also well established that for the doctrine of res ipsa loquitur to apply, it must be shown: (1) The circumstances are such as to create an inference of negligence on defendant's part; (2) control and management of the instrumentality causing the damage was in the exclusive control of defendant, and (3) plaintiff was not in a position to know the particular circumstances which caused the instrumentality to operate to plaintiff's injury, whereas, the facts were such that defendant is presumed to possess superior knowledge in this regard." (citations omitted)
Our Supreme Court, in Boudreaux v. American Insurance Company, supra, stated:
"Nevertheless, when all the evidence is in and the question is whether, by reason of the res ipsa loquitur rule, the plaintiff has preponderantly proved that the defendant is responsible in tort for his injury, we have in our most recent decision on the issues noted that the real test of applying res ipsa loquitur to be as follows: `Do the facts of the controversy suggest negligence of the defendant, rather than some other factors, as the most plausible explanation of the accident?" Pilie v. National Food Store, 2A5 La. 276, 158 So.2d 162, 165 (1963). (Italics ours.) On the other hand, application of the principle is defeated if `an inference that the accident was due to a cause other than defendant's negligence could be drawn as reasonably as one that it was due to his negligence.' 158 So.2d 165 (Italics ours.) See also Comment, 25 La.L.Rev. 748, 764 (1965). This is simply another formulation of the burden of a plaintiff in a tort action to prove that, more probably than not, his injury was caused by the negligence of the defendant."
We conclude that the facts of this case do not warrant application of res ipsa loquitur. There is no evidence in the record tending to show that the tank in question or its appurtenances were in any way defective in design or construction. We cannot say that a bean storage tank is a dangerous instrumentality per se.
There were no eyewitnesses to this tragic accident. All that plaintiffs are able to show is that their decedent was found suffocated in a bean storage tank which was being drained of its contents after he was observed around the tank at some time before his disappearance. The absence of eyewitnesses to an accident does not establish a prima facie case of negligence against an alleged tort feasor. Davis v. Reliance Electric Company, 351 So.2d 1238 (La.App. 1st Cir. 1977).
*898 It is reasonable to conclude that Nathaniel entered the tank by way of the top manhole, as the level of the beans in the tank would prevent access through the side door. However, there is a complete absence of evidence showing how he came to be trapped in the beans themselves. We do not know how or why he came to be inside of the tank. We do not know if Nathaniel lost his balance and fell into the tank while peering inside, or if he voluntarily climbed down into the tank and then somehow became engulfed in the beans. Any attempt on our part to resolve this matter would be based on pure speculation and conjecture.
Plaintiffs are unable to point to any specific negligent conduct on the part of defendants. Considering the known facts in this case, an inference that the accident was due to a cause other than defendant's negligence could be drawn as reasonably as one that it was due to defendant's negligence. Boudreaux v. American Insurance Company, supra. Under these circumstances, we find the doctrine of res ipsa loquitur inapplicable to the instant case.
We likewise find that plaintiffs are not entitled to any recovery under the doctrine of attractive nuisance. The record reflects that Nathaniel was old enough and intelligent enough to appreciate the danger of entering the tank when it was being drained of beans. Thus, the attractive nuisance doctrine is inapplicable. Richards v. Marlow, 347 So.2d 281 (La.App. 2nd Cir. 1977).
We conclude that in the instant case, plaintiffs have failed to sustain their burden of proving that the accident was caused by negligence on the part of defendants.
For the above reasons, the judgment of the trial court is reversed. It is ordered, adjudged and decreed that there be judgment in favor of defendants Union Oil Mill, Inc., Victor Cross, d/b/a United Elevator Company, and Employer's Liability Assurance Corporation, Ltd. and against plaintiffs, dismissing plaintiffs' suit. Costs on the trial and appellate level are assessed to plaintiffs.
REVERSED AND RENDERED.
WATSON, J., concurs in the result being of the opinion that the deceased youth was presumptively an employee of defendants and the rights of his survivors are governed by the Compensation Act. LSA-R.S. 23:1044.

ON REHEARING
Applicant notes that through inadvertence and error, the written reasons assigned by the trial court were not made a part of the record on appeal and were not therefore considered when the court heard the case and rendered its original opinion. The record has since been supplemented and this court has considered the written reasons assigned by the trial judge.
We have reviewed the trial court's reasons in light of our original opinion and conclude that our original opinion is correct.
Accordingly, applicant's application for rehearing is hereby denied.